THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CHI-
CAGO JUNCTION RAILWAYS AND UNION STOCKYARDS COM-
PANY, Appellant, *v.* JAMES A. ROBERTS, as Comptroller of
the State of New York, Respondent.

1. CORPORATION TAX — FOREIGN CORPORATIONS — CONDITIONS PRECE-
DENT TO JURISDICTION. The jurisdiction to tax foreign corporations
under chapter 542, Laws of 1880, as amended by chapter 501, Laws of
1885, depends upon the existence of two concurring conditions, namely,
that the corporation shall be "doing business in this state," and that its
capital or some portion thereof shall have been "employed within this
state."

2. FOREIGN INVESTMENT COMPANY — CAPITAL NOT EMPLOYED WITHIN
THIS STATE. A foreign corporation, whose capital is wholly invested in
the stock and bonds of an independent foreign corporation doing business
wholly out of this state, whose whole income is derived from such invest-
ment, and which maintains a leased office, with furniture, officers and
clerks, in this state, where it receives and distributes the dividends or
income derived from its investment, which constitutes its whole busi-
ness, is not subject to taxation under the act of 1880–1885, since, although
it is "doing business in this state," no part of its capital is "employed
within this state," within the meaning of the statute.

*People ex rel. Railways Co.* v. *Roberts,* 90 Hun, 474, reversed.

(Argued June 7, 1897; decided October 12, 1897.)

APPEAL from an order of the General Term of the Supreme
Court in the third judicial department, entered December 21,
1895, which affirmed, on certiorari, a determination of the
comptroller of the state of New York fixing and determin-

1

ing, upon a rehearing before him, a tax against the relator in pursuance of chapter 542, Laws of 1880, and the acts amendatory thereof.

The facts, so far as material, are stated in the opinions.

*William D. Guthrie* and *Carl A. de Gersdorff* for appellant. The relator is not " doing business in this state " within the meaning of the statute. (L. 1890, ch. 522, §§ 1, 3 ; *People* v. *Equitable Trust Co.*, 96 N. Y. 387, 394 ; *People ex rel.* v. *Wemple*, 129 N. Y. 558, 563 ; *People* v. *H. S. M. Co.*, 105 N. Y. 76 ; *S. C. O. Co.* v. *Wemple*, 44 Fed. Rep. 24 ; *People ex rel.* v. *Campbell*, 139 N. Y. 68.) The relator employs no part of its capital stock within the state of New York. (L. 1885, ch. 501, § 11 ; *People ex rel.* v. *Roberts*, 145 N. Y. 375 ; *People ex rel.* v. *Campbell*, 139 N. Y. 68 ; *People ex rel.* v. *Roberts*, 8 App. Div. 201 ; 151 N. Y. 619 ; *People ex rel.* v. *Coleman*, 126 N. Y. 433 ; *People ex. rel.* v. *Wemple*, 150 N. Y. 46 ; *Demarest* v. *Flack*, 128 N. Y. 205.)

*T. E. Hancock* for respondent. The relator employed capital stock in the transaction of business in this state. (129 N. Y. 562 ; 133 N. Y. 323 ; *People ex rel.* v. *Roberts*, 149 N. Y. 572 ; *People ex rel.* v. *Roberts*, 91 Hun, 162 ; *People ex rel.* v. *Campbell*, 66 Hun, 147 ; *People ex rel.* v. *Roberts*, 152 N. Y. 59 ; *People ex rel.* v. *Campbell*, 138 N. Y. 543 ; *People ex rel.* v. *Com. of Taxes*, 23 N. Y. 224 ; *People* v. *Campbell*, 88 Hun, 548 ; *People ex rel.* v. *Roberts*, 82 Hun, 318 ; 147 N. Y. 699.) The relator was engaged in " doing business in this state." (*People* v. *H. S. M. Co.*, 105 N. Y. 83 ; 131 N. Y. 69 ; *People ex rel.* v. *Wemple*, 133 N. Y. 325 ; *People ex rel.* v. *Wemple*, 129 N. Y. 562 ; *People* v. *E. T. Co.*, 96 N. Y. 397 ; *People ex rel.* v. *Roberts*, 152 N. Y. 59.)

Andrews, Ch. J.   The jurisdiction to tax foreign corporations under chap. 542 of the Laws of 1880, as amended by chap. 501 of the Laws of 1885, and the subsequent amendments, depends upon the existence of two concurring con-

1897.]   Peo. ex rel. Chicago Junc., etc., Co. v. Roberts.   3

N. Y. Rep.]   Opinion of the Court, per Andrews, Ch. J.

ditions, namely, that the corporation sought to be taxed shall be "doing business" in this state, and, second, that its capital or some portion thereof shall have been "employed within this state." (Chap. 501, Laws of 1885, sec. 11.)  This point was sharply presented and expressly decided in *People ex rel. Harlan and Hollingsworth Co. v. Campbell, Comptroller* (139 N. Y. 68).  The relator in that case was a manufacturing corporation created under the laws of the state of Delaware, where it conducted its manufacturing operations, but having a rented office in the city of New York, in which it placed office furniture and which was in charge of a salaried agent. The office was maintained for the convenience of the corporation and its patrons.  Meetings and conferences were held therein between the agent and persons contemplating entering into contracts with the corporation, but the contracts themselves when made were signed and executed at the home office in Wilmington.  The relator was taxed upon the basis of $25,000 of capital stock "employed in this state."  It was claimed on behalf of the relator that it was neither "doing business" in this state nor employed any of its capital therein within the meaning of the statute.  This court reversed the decision of the comptroller, Judge Earl writing the opinion. The court declined to pass upon the question whether the relator was "doing business" in this state within the meaning of the statute, but rested its judgment on the ground that no part of its capital was employed therein.  Judge Earl said : "We leave this question (as to the relator's doing business in this state) unanswered, as we are satisfied that it did not employ any of its capital within this state, and that, therefore, there was no basis for the imposition of the taxes.  As before stated, except the small amount of furniture in its office, it did not have or keep any property of any kind within this state, and it did not disburse any money in this state.  The only obligations it incurred in this state were for the rent of the office and the salary of its agent, and they were discharged by checks drawn in the state of Delaware, on a Delaware bank, and paid in that state.  Those checks were obliga-

tions of the relator, and not property in any sense belonging to it, and they were no portion of its capital. They operated as payments made in the state of Delaware, and there was no ground whatever for saying that it employed $25,000 of its capital, or any other sum, within this state. We do not think that the office furniture could fairly be considered as capital employed within this state." (See, also, opinion of O'BRIEN, J., *People ex rel. S. T. C. Co.* v. *Wemple,* 133 N. Y. 323.)

While, in most cases, a foreign corporation doing business within this state will employ some portion of its capital in the prosecution of such business, it is quite possible that the business which it prosecutes here may not require the use of any part of its capital, and, when this is the case, there can be no taxation for the reason that there is no basis for taxation, since the basis for the tax is the "amount of capital stock employed within this state." Having in view the necessity of the coexistence of both of the conditions mentioned to warrant the imposition of a tax under the act of 1885, it is important to refer to the facts disclosed by the record. The relator is a corporation organized under the laws of New Jersey as an investment company with a capital of $13,000,000, and is managed by a board of ten directors, two of whom only are residents of the state of New York. It has an office in Jersey City where meetings for the election of directors are annually held, and an office in the city of New York for which it pays an annual rental of $1,500, containing office furniture of the value of $1,000, and it pays salaries to a treasurer, secretary, clerk and stenographer employed in the city of New York, amounting to $10,000 a year. The company seems to have been organized for the purpose of investing its capital in the purchase of the stock and bonds of the Union Stock Yard and Transit Company, an Illinois corporation, and its whole capital has been invested in the stock and bonds of that corporation. It has issued shares to its own stockholders to the full amount of its capital stock. Upon the purchase of the stock of the Illinois corporation, the relator deposited it with the Central Trust Company of New

York, as collateral security for the payment of certain bonds issued by the relator.  The organization and management of the Chicago corporation is independent of the relator.  The relator's whole income is derived from its investment in the Chicago company.  The entire business of that company is done at Chicago, and its dividends are declared and paid in that city.  The dividends and income of the relator, arising from the investment in the Illinois corporation, are applied by it to the payment of the interest and principal of its obligations, the disbursements of the New York office and in paying dividends to its own stockholders declared, from time to time, by the directors at meetings in New York.  These dividend checks are drawn upon banks in the city of New York and are there mailed to its stockholders, 1,500 in number.  The relator keeps its bank account in that city, composed of a portion of its dividends and income, and has an average balance of $25,000 or $30,000 to its credit, and it has constituted the Bank of Commerce its transfer agent there.

There is no controversy as to the fact that in the transaction of its business in this state, the relator has and employs no money for any purpose, except that derived in the form of dividends or interest from its investment in the stock and bonds of the Illinois corporation.  Its whole capital remains invested out of this state and it applies the income therefrom in the manner hereinbefore stated.  It may be conceded that the relator in keeping an office in the city of New York, where it received and disbursed its income derived from its investment in the Illinois corporation, depositing it in bank and drawing upon the deposit for the payment of its obligations, dividends to its shareholders and disbursements in maintaining its office, was doing a part of its appropriate function as an investment company, and that this was "doing business within this state" which satisfied that condition of the statute.  But the uncontroverted evidence establishes that it employed no part of its capital here, and the second condition to the exercise of the taxing power under the act of 1885 did not exist.  The profits and earnings of a corporation are not

capital, though they may be converted into capital.   If no such conversion has taken place, they furnish no basis for taxation under the act of 1885, except incidentally as the dividends may be increased, upon which the tax in many cases is computed.   The point that the profits or surplus earnings of a foreign corporation are not capital and not taxable under the statute, was distinctly decided (following prior decisions) in the recent case in this court of *People ex rel. Singer Mfg. Co.* v. *Wemple* (150 N. Y. 46), and the peculiar facts render the case very significant in respect of the application of the principle stated.   There can be no claim in this case that the income of the relator received from the Illinois corporation and disbursed in New York city, was converted into capital.   It is doubtless true that the income from its investment in the Illinois corporation, when received, was the property of the relator within this state.   But it was not capital, but the profits from capital.   If the disbursement of the income by the relator for the purposes and in the manner stated, can in any proper sense be considered an employment of the money within this state, it is, nevertheless, true that it was not an employment of capital and hence was not a fulfillment of the second condition precedent to the jurisdiction to tax the relator, namely, that it should have employed its capital or some part thereof within this state.   We perceive no ground upon which the tax imposed upon the relator can be maintained.   The small amount invested in office furniture and the fact that it rented an office in the city of New York and held it under lease, did not alone justify the imposition of the tax, in view of two decisions of this court. (*People ex rel. H. & H. Co.* v. *Campbell, supra; People ex rel. Washington Mills Co.* v. *Roberts,* 8 App. Div. 201; affd., 151 N. Y. 619.)

We think the decision of the comptroller and the order from which this appeal is taken should be reversed.

GRAY, J.   A careful consideration of this appeal leads me to concur with the chief judge.   Chapter 542 of the Laws of

1880, as amended by chapter 501 of the Laws of 1885, pre-
scribes, in its third section, that every corporation organized
under the laws of any other state, "and doing business in this
state," shall be subject to a tax.   Section eleven prescribes
that "the amount of capital stock which shall be the basis for
tax under the provisions of section three of this act   *   *   *
shall be the amount of capital stock employed within this
state."   It is too clear for argument that it is not sufficient
that a foreign corporation shall be merely doing business in
this state, in order to subject it to taxation, and the condition
must exist that its capital stock, or some part of it, is employed
within this state.   If that condition is not met by the facts of
the case, then the basis, which the law assumes as justifying
the imposition of the tax, does not exist.   This proposition is
not disputed; but it is argued that in the present case the
relator did employ its capital within this state, because its
business was done here, viz., the business of looking after the
investment made of its capital in the purchased shares of
stock of the Illinois corporation.   Whether the relator was
doing business here, or what that business may have been, I
do not consider important to discuss.   The fact is that the
whole capital of the relator had already been employed in the
purchase of the shares of the Illinois corporation, and remained
so invested.   All that was done by the relator at its New York
office was to receive and distribute the dividends, or income,
from the Illinois investment.   The intention of the legisla-
ture was, undoubtedly, to compel foreign corporations, when
employing their capital within this state in the conduct of
their business, to pay a tax in return for the privilege of doing
so.   Such a policy is justifiable and should be given the fullest
effect by the courts; but, unless the condition in fact exists,
which the statute contemplates, there can be no ground upon
which to predicate a liability to assessment.

   I think it would be straining the law beyond its capacity
for construction to hold, where there has been an employment
of its capital stock by a foreign corporation, as in the present
case, in a business investment without the state, that in the

maintenance of an office within the state for purposes of convenience in the distribution of the money proceeding from its foreign investment, there had been an employment of capital here. Its capital is not here in any sense. The relator may be here itself for many corporate purposes; but it was not here for any purpose connected with an employment of its capital stock.

I think this case fairly falls under the authority of the *Harlan & Hollingsworth Case* (139 N. Y. 68), and I agree with the chief judge in his reasoning and in the conclusion that the determination of the comptroller was erroneous and that there should be a reversal of the order appealed from.

Vann, J. (dissenting). The relator is a corporation organized in the state of New Jersey, where its principal office is located, which, however, is used only for the purpose of holding the annual meetings of stockholders to elect directors and the annual election of officers by the directors. Its main office is in the city of New York, where all its ordinary business is carried on and all corporate acts done which create an income for division among its stockholders. Its business is making investments, not for others but for itself. Its capital stock is $13,000,000, divided into 130,000 shares of $100 each, all of which has been issued, one-half being preferred and the other half common. Its annual dividends amount to $910,000, or at the rate of six per cent on the preferred and eight per cent on the common stock. The only investment that it has thus far made is in the stock and bonds of an Illinois corporation, known as the Union Stock Yard & Transit Company, which carries on the business of " yarding" and feeding horses, cattle, sheep and hogs as they are brought by different railroad companies into the city of Chicago. " The motive for the organization" of the relator, as stated by its treasurer, " was this: The stock of the Chicago company was held by comparatively a small number of stockholders and had become very valuable. It was looked upon as a profitable investment, and an entirely separate and different body of men formed

1897.]  Peo. ex rel. Chicago Junc., etc., Co. v. Roberts.  9

N. Y. Rep.]        Dissenting opinion, per Vann, J.

the project of purchasing that entire stock and eliminating the old holders and passing the ownership of it into a corporation, which should be formed with its own capital for the express purpose of holding and owning that stock alone, the assumption being that the stock should be purchased from the individual holders of the Chicago company's stock at a price that would afford a fair return upon the larger capitalization of the new company."

When the relator was organized it purchased nearly all of the stock of the Chicago company, which was held in several different states, and pledged some of the certificates to the Central Trust Company of New York to secure an issue of bonds amounting to $10,000,000, bearing interest at the rate of five per cent, and deposited the remainder in New York city for safekeeping. The relator has nothing to do with the business of the Chicago company, which manages itself, transacts its own affairs and earns its own profits, but when the latter company declares a dividend, the portion to which the relator, as a stockholder, is entitled, is transmitted to New York, and a part of the proceeds, $500,000, is used to pay the interest on the bonds, a part, $58,000, to retire that amount of the principal of some income bonds, while the remainder, $910,000, is distributed in dividends among the relator's stockholders. Thus the entire business of the relator is buying the stock of another company, caring for the investment, receiving the dividends, paying its debts and distributing its profits. It does not earn money by making and selling articles, like a manufacturing corporation, nor lend its capital, like a banking corporation, but simply invests its capital in the stock of another corporation, looks after its investment and enjoys the profits. That is its sole business, which is substantially all carried on in the city of New York, where it rents an office at $1,500 a year, has furniture worth $1,000, an average bank account of $25,000 or $30,000; a treasurer, secretary, bookkeeper and stenographer, whose annual salaries aggregate the sum of $10,000. The value of the lease does not appear. The directors hold their business meetings in New York city,

10 Peo. ex rel. Chicago Junc., etc., Co. *v.* Roberts. [Oct.,

Dissenting opinion, per Vann, J.          [Vol. 154.

the dividends payable to it are received there, and the dividends paid by it are declared and distributed there. Fifteen hundred different checks are required to make the distribution. The only tax that this prosperous company pays, so far as appears, is the very moderate franchise tax required by the laws of the state of New Jersey. When the comptroller, under the authority of chapter 542 of the Laws of 1880, as at various times amended, appraised the value of its capital stock employed within this state at the sum of $52,500, for the purpose of taxation upon its business, it felt aggrieved, and caused a writ of certiorari to be issued that brought the subject before the Supreme Court for review, and its appeal from the determination of that court sustaining the action of the comptroller now brings the subject before us.

The object of the statute under which the tax in question was laid is to raise money for the use of the state by imposing a specific tax upon the corporate franchises of domestic corporations and upon the business of foreign corporations done in this state. (L. 1880, ch. 542; L. 1881, ch. 361; L. 1882, ch. 151; L. 1885, ch. 501; L. 1890, ch. 522; L. 1894, ch. 562; *People* v. *Equitable Trust Co.*, 96 N. Y. 387.) So far as applicable to the case in hand, the tax is imposed on corporations doing business in this state upon the basis of the amount of capital stock employed within the state. (*People ex rel. American Contracting & Dredging Co.* v. *Wemple*, 129 N. Y. 558.) As was said by this court in a recent case: "The intention of the legislature is that, when foreign corporations employ their capital in carrying on a business within this state, they must pay a tax to the state in return for the privileges and benefits they enjoy." (*People ex rel. Badische Fabrik* v. *Roberts*, 152 N. Y. 59, 63.)

Two questions, therefore, arise for decision: (1) Whether the relator was doing business in this state, and (2) what amount of its capital stock was employed within this state.

It was not engaged in business in the state of New Jersey, where it was organized, for the election of directors and officers is not doing business within the meaning of the statute,

but simply appointing agents to do business. Nor was it engaged in business within the state of Illinois, for it neither managed nor had the right to manage the business of the Union Stock Yard & Transit Company, of which it was the chief stockholder. The business of that corporation was not its business, for it could not directly control the smallest detail thereof. The capital of that corporation was not its capital, for it could not invest a dollar belonging to it. The property of that corporation was not its property, even to the smallest fractional part, for it could not dispose of it, nor take possession of it, nor control it in any way. Its only power was the power of a stockholder, who can neither bind nor loose the corporation whose stock he holds. The relator does not claim to have been doing business in any state other than New Jersey and Illinois, and, if we have reasoned correctly, it was not doing business in either of those states, yet, as it was a business corporation, it must have been doing business somewhere. Where was it? Some confusion has arisen from the peculiar nature of its business, which was not that of making, buying or selling tangible things, or lending money, or rendering services to others, but was the investment of its own capital, caring for the investment, collecting and dividing the proceeds. Thus it was, so to speak, an incorporated gentleman of leisure. While an individual who simply invests his money and collects the profits is not regarded as a business man, there is no escape from the fact that the relator was a business corporation, engaged in business in some state, and as nearly every business act that it is shown to have ever done, aside from some of the purchases of stock, was done in the state of New York, I think it was doing business in this state within the meaning of the statute.

But, did it employ capital within this state? Here, again, the peculiar nature of its business must be resorted to for an answer to the question. The business, although large in amount, was limited in scope, but all of it, or substantially all of it, was done from the New York office. After the original investment was made, over four years ago, its business was to

look after that investment. That was done in the city of New York, where the certificates of stock were kept, the dividends thereon received and divided, the interest and principal of the funded debt paid, an office rented, furnished and occupied, officers and agents employed and paid, a bank account kept, and where the substance of all the business that was done at all was transacted. A corporation can only do business through officers and agents, and those who have the active management of its affairs are ordinarily paid for their services. The only officers or agents of this large corporation who were paid, so far as appears, discharged their duties in the New York office. The directors held their meetings there, except the first each year, which was for the purpose of organization. All their business meetings were in New York. In fine, substantially all the corporate acts, delegated or otherwise, which directly resulted in the receipt of money to be divided in dividends, so far as the record discloses, were done in this state. Nothing of importance appears to have been done in the state of Illinois, for the money used to buy the original stock of the Chicago corporation belonged to it as soon as the purchase was made, and that company thenceforward owned it and controlled it, and the relator had no voice in the management of its affairs except indirectly through its right, as a stockholder, to vote for directors. Can the act of voting for directors be properly termed the carrying on of business or the employment of capital? Yet that is about all that the relator did in the state of Illinois. Its capital was employed where its business was done, not the business of some other corporation, and its business of looking after its investment was done in the state of New York. The statement that its capital stock was invested in business in Chicago is misleading, for it had no capital stock invested in business there. Its capital stock was invested in certain shares of stock of a company that invested its capital stock in business in Chicago. There is a distinction between capital stock and shares of stock. As was said by Judge FINCH in a late case : " The capital stock of a company is one thing ; that of the shareholders is another and a different thing. That of

the company is simply its capital, existing in money or property, or both; while that of the shareholders is representative, not merely of that existing and tangible capital, but also of surplus, of dividend earning power, of franchise and the good will of an established and prosperous business. The capital stock of the company is owned and held by the company in its corporate character; the capital stock of the shareholders they own and hold in different proportions as individuals. The one belongs to the corparation; the other to the corporators." (*People ex rel. Union Trust Co.* v. *Coleman*, 126 N. Y. 433, 437.)

What money or property, which alone, as thus held, constitute the capital stock of a corporation, did the relator have in Illinois? None, clearly, and, therefore, it had no capital stock employed there. What money or property did it have in the state of New York? It had all but two per cent of the shares of stock issued by the Chicago company. It also had, as it alleged in its petition, bonds of that company to an amount not stated, besides a bank account averaging nearly $30,000, with a furnished office where it carried on its business. It had no property in any other state, and no money except some on deposit in one or two foreign banks.

The Chicago company owned its capital stock, consisting of property and money, but the relator owned substantially all of the shares of stock issued by that company, and those shares of stock constituted its own capital stock. It did not own and could not control or manage the property which constituted the capital stock of the corporation in Chicago, and hence was not engaged in business there, but it did own, control and manage the shares of stock issued by the Illinois corporation. That management and control, which constituted its business, were exercised by it in the city of New York. There is where it carried on its business of taking care of its investments, and there is where, within the meaning of the statute, its capital stock was employed, at least to the amount of the valuation made by the comptroller. *Non constat* the value either of its lease, or of the bonds owned by

it, warranted that valuation. But, to quote from Judge Gray in another case, " the average monthly balances in the New York banks, and the expenditure for salaries and other matters connected with the maintenance of its office in New York city " were a sufficient basis for the assessment. (*People ex rel. A. C. & D. Co.* v. *Wemple*, 129 N. Y. 558, 562.) A bank account that is used to carry on the business of an " investment " corporation in this state, to pay its office rent, salaries and clerk hire, to purchase office furniture, stationery and postage stamps, and to defray many incidental expenses connected with the transaction of its business, may properly be considered by the comptroller in the discharge of his duties. I think that the relator was subject to taxation under the act in question, that it has not been overtaxed, and that the order appealed from should be affirmed, with costs.

Andrews, Ch. J., and Gray, J., read for reversal; O'Brien and Bartlett, JJ., concur; Vann, J., reads for affirmance, and Haight and Martin, JJ., concur.

Order reversed.