PEOPLE ex rel. A. N. KELLOGG NEWSPAPER CO. v. ROBERTS,
Comptroller.

(Supreme Court, Appellate Division, Third Department. May 4, 1898.)

FRANCHISE TAX—FOREIGN CORPORATIONS.
    A corporation organized in another state for the purpose of furnishing
"patent insides" to newspapers, and which has a branch office in the state
for the purpose of soliciting advertisements to be printed at its home office,
is not liable to taxation on its office conveniences used in the state, nor
is its employment of capital in the state such that a franchise tax can be
imposed upon it.

Certiorari by the people of the state of New York, on the relation of
the A. N. Kellogg newspaper company, against James A. Roberts, as
comptroller of the state of New York, to review the determination of
the comptroller in refusing to revise, set aside, or reduce his assess-
ment of the capital stock employed by the relator in this state, and
the taxes fixed and computed by him thereon for the 14 years ending
November 1, 1895, aggregating $1,126.25.

The relator is a foreign corporation organized under the laws of the state of
Illinois, and has an authorized paid-up capital of $200,000. Its home office and
principal place of business is in Chicago, Ill. Its business consists of printing
at Chicago, and furnishing from there to the publishers of newspapers in about
2,000 different places in the United States, one side of their respective news-
papers, in which side the relator inserts in about 70 inches of its space the ad-
vertisements of its own customers, the pay for which belongs to the relator; the
respective local publishers having no interest therein. Such local publishers print
the other side of their respective sheets, inserting therein what they please,
and issue the same to their customers. The relator furnishes such "patent insides"
or "outsides," so called, from Chicago, to about 30 newspaper publishers in the
state of New York. No part of the relator's business is done in the state of New
York except the soliciting and securing of advertising patronage for such "patent"
part of the newspapers, or of some specified number of them, and what is
incidental to making and collecting upon such contracts. The relator has an office
in the city of New York, with a manager and five clerks, for the purpose of
securing advertising patronage. There it received orders, forwarded them to the
home office in Chicago, collected the payments therefor, and deposited the collec-
tions in a New York bank to the credit of the home office, which alone drew
checks or drafts upon the same. The expenses of the New York office, including
rent and salaries, were paid by checks drawn at Chicago and sent to the New

York manager. The average of the monthly balances of deposits made in New York for the 14 years was $5,941.52; annual expenses of the New York office, including rent and salaries, $12,741.21; value of office furniture, $700. The comptroller fixed the capital of the relator employed within this state for 12 years ending November 1, 1893, at $8,000, tax, $720; for 1894, $16,666, tax, $177.08; for 1895, $16,667, tax, $229.17. The tax was adjusted according to the dividends paid. Action of the comptroller was reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

John B. Greene, for relator.
G. D. B. Hasbrouck, Dep. Atty. Gen., for James A. Roberts.

LANDON, J. The relator's business in this state is the procurement of orders for advertising and the collection of payment therefor. The orders themselves are in part executed by the relator outside of the state, and the execution finished by the relator's customers, to whom it furnishes "patent insides" or "outsides," so called, containing the advertisements. It has an agency within the state to procure orders for the business it does without the state. It has an office here as a convenient headquarters. Its bank balance here consists of its collections in payment for its business done elsewhere, and temporarily deposited here. The wages of its employés here, and the rent of its office, are paid from its earnings, as the nature of its business and its payments of dividends imply. It is proper to take earnings, rent, wages, bank balances, and everything else into consideration that will throw light upon the amount of capital employed within this state, but discrimination must be used to perceive what light is thus thrown. We think it is demonstrated that the relator's capital is not employed in this state within the meaning of the statute. To illustrate: Mr. Smith orders through the New York office his advertisement inserted in 100 newspapers in the state of Wisconsin, and pays $500 to the New York office therefor. The New York office sends the advertisements and list of papers to the Chicago office, and deposits the money in a New York bank to the credit of the relator. The relator, at Chicago, checks against the deposit, to pay expenses here or elsewhere. The relator renders the services and supplies in Chicago which result in the execution of the order. It is plain that no part of the order has been executed in New York, nor any part of the relator's capital used there for the purpose of executing it either in Chicago or Wisconsin, unless it be the office furniture and rent. Office conveniences are permitted here to a foreign corporation doing business in another state to solicit orders to be executed in other states, without liability to our franchise tax. People v. Campbell, 139 N. Y. 68, 34 N. E. 753; People v. Roberts, 8 App. Div. 201, 40 N. Y. Supp. 417, affirmed 131 N. Y. 619, 45 N. E. 1134; People v. Roberts, 154 N. Y. 1, 47 N. E. 974. The materials which the Chicago office furnished to newspaper publishers in this state did not constitute the employment of capital here, within the meaning of the statutes imposing a franchise tax. People v. Roberts, 22 App. Div. 282, 47 N. Y. Supp. 949. Some stress is placed by the comptroller upon the form of the relator's returns for the years 1893, 1894, and 1895; but the testimony taken, as well as the nature of the relator's business, show

that these returns were made under a misapprehension of the law as
to what constitutes the employment of capital.

The determination of the comptroller is reversed, but, because of
the fact last stated above, without costs.