PEOPLE ex rel. DUTILH–SMITH, McMILLAN & CO. v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 16, 1904.)

1. CORPORATIONS—LICENSE FEE—STATUTE—CONSTRUCTION—EMPLOYING CAPITAL IN STATE—TIME—COMPUTATION.

 Tax Law, § 181 (Laws 1896, p. 856, c. 908, as amended by Laws 1901, p. 1365, c. 558), requiring foreign corporations to pay a license fee on December 1, 1901, provides that the tax shall be computed on the basis of capital stock employed by the corporation within the state during one year preceding, unless on such day it should not have employed capital for 13 months, in which case the tax shall be paid within the time otherwise provided by the section. *Held,* that the statute means that if the corporation has not done business for 12 months it shall pay the license fee at the time otherwise prescribed in the section, to wit, between 12 and 13 months after it shall have commenced to employ capital within the state.

2. SAME—CAPITAL EMPLOYED IN STATE.

A foreign corporation having its officers in the state, but acting only as an agent for the sale of goods abroad, and doing some construction work in England, was not "employing capital within the state" within the statute.

Certiorari by the people, on the relation of Dutilh-Smith, McMillan & Co., to review the action of Nathan Miller, as comptroller of the state, in imposing a license fee upon the relator under section 181 of the tax law (Laws 1896, p. 856, c. 908, as amended by Laws 1901, p. 1365, c. 558), and a tax under section 182, for the year ending October 31, 1901. Decision of the comptroller reversed.

The relator is a corporation organized under the laws of the state of Delaware. Its authorized capital stock is $500,000, of which $100,000 was issued for cash and $400,000 for the good will of the firm of Dutilh-Smith, McMillan & Co., of Philadelphia. On or about September 15, 1901, the relator moved its principal office from Philadelphia to New York City, where it has since been maintained. In 1902 the comptroller stated an account for license fee against the relator of $625, and for franchise tax for the year ending October 31, 1901, $750. Upon an application for readjustment thereof the license fee was reduced to $312.50 and the tax to $375. This determination the relator seeks to have reviewed upon this writ of certiorari.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Steele, De Friese & Frothingham (Theodore L. Frothingham, of counsel), for relator.

John Cunneen, Atty. Gen. (William H. Wood, of counsel), for respondent.

SMITH, J. By section 181 of the tax law (Laws 1896, p. 856, c. 908, as amended by Laws 1901, p. 1365, c. 558) the license fee is to be computed upon the basis of the capital stock employed by the corporation within this state during the first year of carrying on its business. The section then reads:

"The tax imposed by this section on a corporation not heretofore subject to these provisions shall be paid on the first day of December, 1901, to be computed upon the basis of the amount of capital stock employed by it within the state during the year preceding such day; unless on such day such corporation shall not have employed capital within the state for a period of thirteen months, in which case it shall be paid within the time otherwise provided by this section."

While this provision of the statute is not clear, the only interpretation possible which will give effect to its provisions is that, if the corporation has not done business for 12 months, it shall pay the license fee at the time otherwise prescribed in the section, to wit between 12 and 13 months after it shall have commenced to employ capital within this state. Inasmuch as the company did not come into the state until September 15, 1901, it had not, at the time this tax was stated in the comptroller's account, employed capital within this state for a period of 12 months, and was therefore not then subject to the payment of the license fee. The readjustment of this tax, however, was upon October 6, 1902. At that time the relator had been employing capital within the state for 12 months, and was properly subject to the payment of this license fee upon the actual capital em-

ployed within the state during said 12 months, and the first question presented for our determination is as to what part of the capital of the relator was employed within the state of New York.

From the evidence presented to the comptroller it appeared that this corporation was simply acting as the agent of the American Car & Foundry Company. By the contract of its agency the relator was not permitted to sell any goods in the United States. Their business was solely in making contracts in foreign countries. These contracts were made through the agencies in those foreign countries, and the orders were sent direct to the American Car & Foundry Company, as was also the money due upon the contracts. The compensation of the relator was 2½ per cent. upon the contract prices paid. There was, in addition to this, some construction work, which was sublet, however, but which was entirely carried on in England, and outside of the United States and the state of New York. In fact, the New York office of this corporation appears to have been simply the headquarters in which were received the reports from these various agents, and from which were given to them their instructions.

We are unable to find any capital of the relator employed within the state of New York. While the good will of a corporation has been held at times to be a part of the capital employed within this state, it has never been so held where substantially all the business of the corporation was carried on in foreign countries. Their business was that of selling goods exclusively in foreign countries, and there, it seems to me, their capital, including their good will, was employed. The mere fact that the headquarters were in New York, from which place directions were given, and at which place orders were received, does not change the nature of the business from one essentially foreign to one transacted within the state. See People ex rel. Chicago Junction R. & U. S. Co. v. Roberts, 154 N. Y. 1, 47 N. E. 974.

The decision of the comptroller should therefore be reversed, with $50 costs and disbursements to the relator. All concur.