48 People ex rel. Buffalo Union Furnace Co. *v.* Gilchrist.

Third Department, January, 1926. [Vol. 215

---

The People of the State of New York ex rel. The Buffalo Union Furnace Company, Relator, *v.* John F. Gilchrist and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 6, 1926.

Taxation — corporation franchise tax under Tax Law, § 182, for year 1923 — relator, manufacturer of iron and steel, leased entire plant and ceased operations — relator collected rent and income from securities — relator was not employing capital in its business in this State within meaning of Tax Law, § 182 — relator is not subject to tax.

A corporation engaged in the business of manufacturing iron and steel in this State is not subject to a corporation franchise tax under section 182 of the Tax Law for the year 1923, based on the capital employed in this State during the preceding year, where it appears that in 1920 it leased its entire plant in this State and ceased operations here and did not during the year 1922 manufacture iron or steel, but merely collected the rent and the income on securities held by it and distributed the same to its stockholders and declared a stock dividend during that year.

Under the circumstances, the corporation did not employ capital in this State in its business during the year 1922 within the meaning of section 182 of the Tax Law.

Certiorari order granted out of the Supreme Court at the Albany Special Term on the 25th day of October, 1924, directed to John F. Gilchrist and others, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing a franchise tax against the relator for the year 1923 under section 182 of the Tax Law.

*Slee, O'Brian & Hellings* [*John Lord O'Brian* and *Ralph Ulsh* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Wendell P. Brown, Claude T. Dawes* and *Henry S. Manley, Deputies Attorney-General*, of counsel], for the respondents.

Cochrane, P. J. Section 182 of the Tax Law (as amd. by Laws of 1922, chap. 408; since amd. by Laws of 1924, chap. 332) as far as material provides as follows: " For the privilege of exercising its corporate franchises in this State every domestic corporation * * * shall pay * * * annually, in advance, an annual

People ex rel. Buffalo Union Furnace Co. *v.* Gilchrist.    49

App. Div. 48]        Third Department, January, 1926.

tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this State, and upon each dollar of such amount."

In order to justify the tax which has been assessed herein under this statute it is necessary, *first,* that the corporation should have exercised its corporate franchises, and, *second,* as a basis for the computation of the tax its capital stock or some of it should have been employed. The tax was assessed for the year 1923 upon the basis of the amount of capital stock " employed during the preceding year," which was the year 1922. We assume for the purposes of this case as contended by the Attorney-General that the relator was in the exercise of its corporate franchises. We reach the conclusion, however, that on the facts which here appear the relator did not in the year 1922 employ its capital within the meaning of the statute.

The facts are not in dispute. The relator was incorporated as a domestic corporation in the year 1900. It was then capitalized at $1,000,000 in common stock, and $200,000 in preferred stock, which was subsequently retired. The certificate of incorporation states the purpose of the formation of the relator as follows: " To manufacture pig iron from iron ores and products of pig iron into iron and steel in various forms; also to mine, transport and sell iron ores, coal and limestone; to manufacture coke; to manufacture furnace slag into bricks, cement or other forms and to sell any and all of the above products. The said corporation may purchase, acquire, hold and dispose of the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds or other obligations." In the year 1920 the relator leased its plant and equipment for a period of forty years with an option to the lessee to purchase the property after the expiration of twenty years. The annual rental reserved was $620,000. The transaction also involved the assignment to the lessee of certain quick assets, so called, amounting to $1,777,500, leaving in the hands of the relator practically no property except Liberty bonds, cash, accounts receivable and securities which about equalled its liabilities. The relator retained no interest in the business of its lessee except to receive its stipulated rent and had no participation in the management of the business. By its agreement with the lessee it bound itself not to engage in the pig iron business east of the Mississippi river. Since the execution of the lease it has exercised no functions of a business nature except to receive its rentals and income from securities, turn the latter into cash, pay indebtedness, and distribute income to its stockholders. It has maintained no office except in connection with

**50** People ex rel. Buffalo Union Furnace Co. *v.* Gilchrist.

Third Department, January, 1926.　　　 ' 　　[Vol. 215

another corporation separate and apart from the lessee and which was necessary for the receipt of its income and distribution thereof to its stockholders and keeping the necessary accounts in reference thereto. Only formal directors' or stockholders' meetings have been held. No officer or director has received any salary. When the lease was made the surplus of the relator was over $5,000,000. It was not available for cash dividends but was part of the plant and equipment turned over to the lessee and for which the latter agreed to pay $620,000 annually. What was thus turned over, therefore, really represented a capital investment of more than $6,000,000 including the original capitalization of the relator. After the lease the relator distributed annually to its stockholders cash dividends of $500,000. It did so in the year 1922. In the latter year it also declared a stock dividend of $4,000,000 and issued to its stockholders corresponding stock certificates. It is these cash and stock dividends for the year 1922 which constitute the basis for the tax which has been assessed herein amounting to the sum of $116,500. It is apparent, however, that this stock dividend did not change the financial structure of the corporation nor the interests of the stockholders therein. The stock dividend merely represented assets which had been accumulated before the lease and were tied up in the leased property which went to the lessee and the stockholders merely received a correspondingly greater number of shares of stock aggregating in value the same as those they previously held.

In a subsequent part of section 182 of the Tax Law it is made plain that the capital stock of a corporation to be subject to this tax must be " employed by it *in its business.*" The relator as appears from the foregoing facts had withdrawn from business. It was merely receiving and distributing income. Had it sold its property and invested the proceeds no one would claim it was employing its capital within the meaning of the statute. There is no difference in principle because instead of selling the relator leased its property and instead of distributing to its stockholders interest from the avails of a sale it distributed rents from the lease. The language of the court in *People ex rel. Chicago Junc., etc., Co.* v. *Roberts* (154 N. Y. 1, 6) is particularly pertinent here: " If the disbursement of the income by the relator for the purposes and in the manner stated, can in any proper sense be considered an employment of the money within this State, it is, nevertheless, true that it was not an employment of capital and hence was not a fulfillment of the second condition precedent to the jurisdiction to tax the relator, namely, that it should have employed its capital or some part thereof within this State." In *People ex rel. Union*

*Ferry Co.* v. *Roberts* (66 App. Div. 157, 160) this court said: " Capital to be employed within this State must be actively employed, and a nominal employment or an investment of the same was not intended by the statute. * * * ' In *People ex rel. Singer Mfg. Co.* v. *Wemple* (150 N. Y. 46) it was held as to a foreign corporation that the money, *whether capital or surplus,* which it invested in real estate here, not for the transaction of its ordinary business, but for rental, was not " employed within this State " within the meaning of the statute.' In section 182 of the Tax Law the language in regard to the *employment of capital* in this State is substantially the same when it refers to a domestic corporation as it is when it refers to a foreign corporation." The cases cited by respondents were those where the corporations were exercising their activities in line with the purposes of their creation as expressed in their certificates of incorporation or were affirmatively and actively engaged in the business of holding, managing or dealing in real estate as a source of profit. The relator in this case was not active but passive. It conducted or assisted no enterprise. It used no money derived from business conducted by itself and such use as it made of its money was confined to the payment of its obligations and distribution to its stockholders. Since the year 1920 it seems to have retired from business as far as possible without actual dissolution. We conclude that there was no employment of capital within the meaning of the statute and, therefore, that the assessment of more than the minimum tax of ten dollars authorized by the statute was improper.

The determination should be annulled, with fifty dollars costs and disbursements, except as to the minimum tax of ten dollars.

All concur.

Determination annulled, except as to the minimum tax of ten dollars, with fifty dollars costs and disbursements.