PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. KNIGHT, Comptroller.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. CORPORATIONS—FRANCHISE TAX—VALUE OF STOCK.

Tax Law, § 182, providing that the franchise tax on domestic corporations making less than 6 per cent. dividends on the par value of their capital stock shall be taxed at a certain rate on such proportion of their capital stock, at par, as the amount of the capital stock employed within the state bears to the entire capital stock, does not require such capital stock to be taxed at par if it has a higher value, but it may be taxed at its market value.

2. SAME—ANTICIPATED DIVIDENDS—SUPPLIES OUTSIDE STATE.

Anticipated dividends on stock owned by a domestic corporation in other corporations, and coal and supplies owned by it and situated outside the state, cannot be considered in computing franchise tax of the corporation assessed under Tax Law, § 182, which requires the computation of such tax on the basis of the portion of its capital stock employed in the state.

3. SAME.

The fact that stock of a foreign corporation, which is owned by a domestic corporation, has been pledged as collateral for the bonds of the latter, does not require the omission of such stock, in computing the franchise tax of the corporation under Tax Law, § 182, which requires the computation of such tax on the basis of the portion of the capital stock employed in the state.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company, against Erastus C. Knight, as comptroller of the state, to review a tax assessment. Assessment modified.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Ira A. Place, for relator.

John C. Davies, Atty. Gen., and Henry B. Coman, Dep. Atty. Gen., for respondent.

CHASE, J. The principal contention of the relator is that under section 182 of the tax law, in cases where dividends amounting to less than 6 per centum have been declared upon the capital stock of the corporation, and the cash value of the capital stock exceeds its par value, the tax should be at the rate of $1\frac{1}{2}$ mills upon the par value of that portion of the capital stock employed within this state, and not upon its cash value. We understand that the court of appeals in People v. Roberts, 168 N. Y. 14, 60 N. E. 1043, has held against the relator's contention. The court in that case say:

"The direction that the tax shall be 'upon such portion of the capital stock at par as the amount of capital employed within this state bears to the entire capital of the corporation' was not intended to establish or fix the rate at which such capital stock was to be assessed, but a rule for the computation of the amount of capital stock on which assessment was to be made."

See People v. Roberts, 66 App. Div. 157, 72 N. Y. Supp. 950. The question raised by the relator is not now an open one for discussion in this court.

The comptroller fixed the amount upon which the tax should be computed against the relator under section 182 of the tax law at $106,000,000, and the tax thereon at $159,000. The relator contends that, even if the amount upon which the tax should be computed is based upon the cash value of its capital stock, and not its par value, the amount as fixed by the comptroller is excessive. We are unable to ascertain just how the amount was determined by the comptroller. The relator claims that its entire capital on the 31st day of October, 1900, was $338,897,656.69, and included in this amount is an item of $965,217.97 for anticipated dividends on stock of other corporations owned by the relator, and an item of $171,653.20 carried on the books of the relator as bills receivable. The item for anticipated dividends was made up by taking the portion of the year since dividends were last declared on the stock so owned by the relator, and computing dividends for such time upon the assumption that further dividends would thereafter be declared at the same rate per annum. Possible or probable dividends, until declared, are a mere incident to the stock, included in its market value. The item called "bills receivable" consists of expenditures for lessee and other corporations, and special expenditures for the common good of the several corporations. This item is not an obligation against any corporation or corporations, and the relator expects no direct return for it. It does not exist as an asset apart from the property of the corporations or the stock therein. For the purpose of fixing the amount upon which this tax should be computed, these items should be deducted from the capital of the relator, as above stated, leaving the amount $337,760,785.52. Of this amount the relator admits that $205,029,380.45 was employed within this state. The balance of the assets consists of $15,230,186.06 for rolling stock, being such proportion of all relator's rolling stock as the mileage thereof without the state bears to the entire mileage of all such rolling stock; $100,000 for coal and supplies without the state; $115,089,533.01 for stock owned by the relator in foreign corporations; and $2,311,686 for that portion of the capital stock owned by the relator in a domestic corporation which corresponds with the proportion of the assets of such domestic corporation used without the state. Under the decision in People v. Knight (Sup.) 77 N. Y. Supp. 398, the rolling stock without the state and the said coal and supplies are not capital employed within this state. The court of appeals in People v. Campbell, 138 N. Y. 543, 34 N. E. 370, 20 L. R. A. 453, referring to stocks owned by the relator in that case, say:

"As to so much of such stocks as was in corporations organized and existing in this state, it cannot be doubted that its capital was employed within this state. So much of its capital, to wit, its patents, as was used to purchase such stocks was employed for that purpose, and was thus used for the business of the relator. The stocks existed within this state, and were kept and held to produce revenue here, and hence in every sense were employed within this state. They took the place as a portion of the relator's capital of the patent rights transferred in payment for them. The stocks which the relator took in companies organized outside of this state stood for so much of the relator's capital invested outside of the state. It took a portion of its capital, to wit, a portion of its patent rights, and employed it outside of the state to purchase those stocks. Its property in those corporations, represented by its shares of stock, was outside of this state, and

was in no sense employed here. Those stocks had no situs here, and were not taxable here, under any system of taxation which has ever existed in this state."

See People v. Wemple, 148 N. Y. 690, 43 N. E. 176.

The fact that the principal part of the stock owned by the relator in foreign corporations has been pledged as collateral security for bonded indebtedness of the relator does not require that the stock so pledged, but still retained for all practical purposes, shall be omitted from the statement of relator's capital. The capital employed within this state, therefore, is said $205,029,380.45, to which should be added $2,311,686, making a total of $207,341,066.45, and being .61386+ per cent. of the entire capital of the relator. The average amount of the relator's capital stock at par during the year was $108,750,000, and the average price 129.8125. The average cash value of the average amount of relator's capital stock was $141,171,039.75. The amount upon which the tax should be computed against the relator, therefore, is $86,659,287.62, and the tax should have been $129,988.93.

The determination of the comptroller should be modified by reducing the tax to $129,988.93, and as so modified affirmed, with $50 costs and disbursements to the relator. All concur.