THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant and Respondent, *v.* ERASTUS C. KNIGHT, as Comptroller of the State of New York, Respondent and Appellant.

1. FRANCHISE TAX — COMPUTED ON ACTUAL, NOT PAR VALUE OF STOCK. Under sections 182 and 190 of the Tax Law (L. 1896, ch. 908) the actual, not the par, value of the capital stock of a corporation employed within this state is the basis for computing the franchise tax.

2. TAXABLE CAPITAL — ROLLING STOCK OF RAILROAD CORPORATIONS. The value of the rolling stock of a domestic railroad corporation, except that used exclusively outside of the state, is capital employed within this state.

3. NON-TAXABLE CAPITAL — PLEDGED STOCK OF FOREIGN CORPORATIONS. Stock of foreign corporations purchased by a domestic railroad corporation by the issue of bonds, the stock being pledged to a trust company in this state as collateral security for their payment, constitutes no part of its capital employed therein.

4. ANTICIPATED DIVIDENDS — BILLS RECEIVABLE — COAL AND SUPPLIES. The amount of " anticipated dividends on stock of other corpora-

tions owned by a domestic railroad corporation, the amount of bills receivable for expenditures on leased lines, and the value of coal and supplies owned by the corporation without the state," constitute no part of its capital employed therein.

5. STOCK OF DOMESTIC TRANSPORTATION COMPANY. The stock of a domestic transportation company employing the capital represented thereby outside the state, owned by a domestic railroad corporation, constitutes no part of the latter's capital employed therein.

*Peo le ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight,* 75 App. Div. 169, modified.

(Argued November 13, 1902; decided January 13, 1903.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 20, 1902, which modified and affirmed as modified a determination of the defendant assessing a franchise tax against the relator for the year ending October 31, 1900.

The facts, so far as material, are stated in the opinion.

*Ira A. Place* for relator, appellant and respondent. The fact that relator's holdings of capital stock in certain foreign corporations were acquired and paid for by and with the proceeds of bonds issued by relator constituted no reason against such investments being accounted portions of relator's total capital or assets. (L. 1896, ch. 908; L. 1880, ch. 542; L. 1881, ch. 361; L. 1885, ch. 359; L. 1889, chs. 193, 353; L. 1890, ch. 522.) The fact that such capital stock was, during the tax year, deposited within this state as collateral security for such bonds, did not operate to render relator's property therein " capital employed within this state " within the meaning of the Tax Law. (*People ex rel.* v. *Knight,* 75 App. Div. 164.) Relator's capital stock employed within this state for the year ending October 31, 1900, was not lawfully taxable for that year upon a basis in excess of its par value. (*People ex rel.* v. *Roberts,* 168 N. Y. 14; *People* v. *D. & H. C. Co.,* 54 Hun, 598; *Torrey* v. *Milbury,* 21 Pick. 64; *Adam* v. *Bancroft,* 3 Sumn. 386; *Clark* v. *Norton,* 49 N. Y. 243; *People ex rel.* v. *Carter,* 52 Hun, 458; *McClusky* v. *Cromwell,* 11 N. Y. 593; *C. C. T. Co.* v. *K. R. R. Co.,*

1903.] Peo. ex rel. N. Y. C., etc., R. R. Co. *v.* Knight. **257**

N. Y. Rep.]     Opinion of the Court, per Haight. J.

154 N. Y. 493; *Smyth* v. *Ames,* 169 U. S. 466; *Louisiana* v. *Pilsbury,* 105 U. S. 278.)

*John C. Davies, Attorney-General (Henry B. Coman* of counsel), for defendant, respondent and appellant. In all cases where a corporation pays dividends amounting to less than six per cent the tax is to be computed, not upon the amount of capital stock at par, but upon the appraised capital, the value of which is to be determined in the manner prescribed in section 190 of the Tax Law. (*People ex rel.* v. *Roberts,* 168 N. Y. 14; *People* v. *D. & H. C. Co.,* 54 Hun, 598; *People ex rel.* v. *Wemple,* 150 N. Y. 46.) The stock of the Lake Shore and Michigan Southern railroad is not capital nor assets of the relator, and should not be considered in computing the tax. (Hill on Trustees, 229; 27 Am. & Eng. Ency. of Law, 126; Tiffany & Bullard on Trustees, 772.)

Haight, J. I concur in the conclusions reached by O'Brien, J., except as to that part thereof which holds that the item of $15,230,186.06 is not taxable. The court below found that this item represented the rolling stock employed outside of the state, it " being such proportion of all of relator's rolling stock as the mileage thereof without the State bears to the entire mileage of said rolling stock." As I understand this finding it is to the effect that the rolling stock of the relator is used in this state and outside of the state; that is, cars are loaded at some point in the state, as for instance in the city of New York and run over the relator's road to some other point, say, the city of Buffalo. They then are transferred on to other roads and are run to points outside of the state where they are unloaded and then reloaded and returned to this state. The entire mileage includes that traveled in this state as well as that out of the state; this, with the distance traveled outside of the state and the total value of the stock, furnishes the proportion upon which the computation is made.

17

258  PEO. EX REL. N. Y. C., ETC., R. R. Co. *v.* KNIGHT.  [Jan.

Opinion of the Court, per HAIGHT, J.        [Vol. 173.

The question is as to whether this stock is taxable under the statute. The relator is a domestic corporation. It owns the rolling stock. It is used upon its lines of railroad in this state. True, the cars are transferred on to other roads and are run outside of the state for the purpose of facilitating the transportation of persons and freight without change of cars or of breaking bulk, but the use of the cars outside of the state is but temporary, for they are returned as soon as reloaded and are again used in the transportation of persons and property within this state. It seems to me, therefore, that, under a fair and reasonable construction of the statute, this item should have been included as capital employed within this state.

Under the findings of the court below, as we understand them, the average amount of the relator's capital stock during the year was $108,750,000 ; the average price was $129.8125, making the average cash value of the relator's capital stock for the year $141,171,093.75. The entire amount of the relator's total assets was $337,760,785.52, and the portion of such assets as used in this state $205,029,380.45, to which sum should be added the relator's rolling stock, $15,230,186.06, making the total assets used within the state $220,259,566.51. The statement would thus be

$$x : 141{,}171{,}093.75 :: 220{,}259{,}566.51 : 337{,}760{,}785.52.$$

Under this statement $x = \$92{,}060{,}076.91$, the amount to be assessed at one and one-half mills, which amounts to $138,090.11.

In view of the fact that there is no express finding by the comptroller that none of the relator's rolling stock was used exclusively outside of the state, I think it advisable that the proceedings should be remitted to the comptroller, to the end that further evidence may be taken upon that subject in case it should be claimed that some portion of the relator's rolling stock was used continuously outside of the state, and if it should be found that such was the fact, the amount thereof should be deducted and the order of the Appellate Division and that of the comptroller should be modified accordingly, without costs to either party.

1903.] Peo. ex rel. N. Y. C., etc., R. R. Co. v. Knight. 259

N. Y. Rep.] Opinion, per O'Brien, J.

O'Brien, J. This appeal presents a controversy between the relator and the state concerning the amount of the annual franchise tax for the year ending October 31, 1900. The statute prescribes that this tax must be computed upon the basis of the amount of the relator's capital stock employed within this state. The main contention of the learned counsel for the relator is that the computation should be made upon the stock so employed at its par and not its actual value, and, hence, the determination now here for review is erroneous since the computation was made upon the latter principle. The language of section 182 of the Tax Law would seem to support the relator's contention, but this court has recently held that this section must be read with section 190, and when so read the basis for the tax is the actual and not the par value of the stock. (*People ex rel. N. Y. & E. R. Ferry Co.* v. *Roberts*, 168 N. Y. 14.) In the present case it would, doubtless, be to the advantage of the relator to have the tax based upon the par value of the stock, since that value is much less than the actual value and the dividends are only five per cent, but in case of a corporation that had paid even a smaller dividend and whose stock was much below par it would be decidedly to its disadvantage. By reading the two sections together absurd and unequal results are avoided. The two sections are apparently conflicting. In such cases it is the duty of courts to reconcile contradictory or conflicting provisions when possible, and the case cited is a precise authority for the principle that the tax should be based upon the actual value. This permits the statute to operate in a way that is reasonable and just while the other view would render it even more confusing than it now is. Courts cannot always follow logical reasons when dealing with a complicated statute constructed without much method or system in the arrangement of its different parts and lacking in clearness and precision of language.

Passing from this question of construction, there is nothing left of the controversy on either side save the proper application of the rule and the principles upon which the actual

value of the relator's capital in this state is to be ascertained. With respect to this question it should be noted at the outset that the writ of certiorari was made returnable at the Appellate Division and the issues were there tried and heard upon the relator's petition, the writ and the return of the comptroller, including the papers attached thereto. The general and primary question that the court had before it for decision was one of fact, and that was the actual value of that part of the relator's capital employed within this state; and upon that question the learned court made findings upon which its general conclusion is based. In the main we think these findings are correct. There is one item of property which the court found, as matter of fact, to be employed outside the state, which, nevertheless, it felt constrained for some reason that does not distinctly appear to include as part of the property or capital stock employed in this state. It may be that this is an inadvertence or oversight, but it will be referred to more fully hereafter. The learned court in stating the account excluded certain items of property which the learned attorney-general contended and still insists should be included, and the ground upon which they were excluded from the calculation was that they either represented property employed outside the state or did not in any legal sense constitute capital at all. A very brief reference to these items will show that the action of the court below was correct.

(1) The relator held $90,578,400 of the stock of the Lake Shore and Michigan Southern Railway Company and $18,900,825 in the Michigan Central Railroad Company. This stock was part of the relator's capital or general assets. Both companies are foreign corporations, the former being partly within and partly without the state and the latter entirely without the state. This stock was purchased by the relator by the issue of bonds and the stock was pledged to a trust company as collateral security for the payment of the bonds. The relator being the owner of these stocks, they constituted part of its capital, but that part of its capital was not employed within this state, and so this court has held. (*People ex rel.*

*Edison El. L. Co.* v. *Campbell,* 138 N. Y. 543; *People ex rel. Edison El. L. Co.* v. *Wemple,* 148 N. Y. 690.) In the former case Judge EARL, speaking for this court, said: " The stock which the relator took in companies organized outside of this state stood for so much of the relator's capital invested outside of the state. It took a portion of its capital, to wit, a portion of its patent rights, and employed it outside of the state to purchase those stocks. Its property in those corporations represented by its shares of stock was outside of this state and was in no sense employed here. Those stocks had no *situs* here and were not taxable here under any system of taxation which has ever existed in this state." In the case at bar the stock was purchased, not with patent rights, but with the bonds of the company sought to be taxed. The form of the consideration, however, can make no difference, and so long as that part of the relator's capital represented by the purchase was employed outside of the state it should not be included. Nor can it be important that the stock had for convenience been used as a security upon deposit as collateral for the bonds in a trust company located in this state.

(2) The court below found that a certain portion of the relator's rolling stock, that is to say, its cars, both freight and passenger, was employed outside the state, the proportion being estimated on the mileage or wheelage basis at $15,230,186.06. The court excluded this item from the calculation on the authority of *People ex rel. Lackawanna Transptn. Co.* v. *Knight* (75 App. Div. 164). It was there held that the term " employed within this state," used in section 182, did not mean simply the legal *situs* of the property, and this principle was decided in other cases. (*People ex rel. Chicago Junction, etc., Co.* v. *Roberts,* 154 N. Y. 1; *People ex rel. Waehington Mills Co.* v. *Roberts,* 8 App. Div. 201; affirmed on opinion below, 151 N. Y. 619.) It is obvious that since the relator is a great interstate railroad traversing the continent that a large proportion, or at least some, of its rolling stock must be always employed outside of the state. It may be that

the *situs* of all the relator's property is in the state of its creation, but, as already remarked, the question is not where the *situs* is, but where the property is employed. It may be that various states through which the relator's railroad is operated impose taxes upon such part of its property as upon the basis adopted here is found to be employed in these states respectively, so we think that the learned court below was correct in excluding this item from the estimate of the relator's property employed within this state. The relator is practically operating a continuous line of railroad from New York to Chicago and beyond. It not only owns nearly $110,000,000 of the stock of the western connecting roads, as shown by the record, but is operating these roads as western connections either under leases or traffic agreements. It is practically the owner of these roads just as it is the owner of the West Shore in this state. The operations of the Central do not stop at Buffalo, but extend beyond and through Canada and various western states. It owns these western roads by practically as good a title as it owns the West Shore in this state, and, hence, as already observed, it is operating a continuous line of railroad from the Atlantic seaboard through various states of the west. The part of the line beyond the limits of this state is longer than that part from New York to Buffalo, and the local and through traffic is immense. Therefore, to contend that all the rolling stock of the relator is "employed in this state" would seem to me to be an indefensible proposition. Certainly some of it must necessarily be employed in other states. It cannot all be employed at the eastern end of the line. If so, then the part of the rolling stock employed outside and inside of this state is a question of fact and the court below has found that a designated part of the rolling stock is employed without the state. This court has no power to interfere with that result unless it can say that there is absolutely no evidence in support of the finding. It cannot say that for the plain reason that, as appears from the record, there was evidence on that subject and no one claims otherwise. It has the power to say that, granting to the full extent the fact found as to the

1903.] Peo. ex rel. N. Y. C., etc., R. R. Co. v. Knight. 263

N. Y. Rep.]                    Opinion per O'Brien, J.

employment of part of the rolling stock out of this state, yet as matter of law, since the relator is a domestic corporation and the *situs* of all its personal property is here, all the rolling stock is employed in this state. But such a decision would seem to me to be not only plainly wrong in principle, but sharply opposed to many decisions of this court, some of which are cited above. The stock of the western railroads, amounting to nearly $110,000,000, and the coal and other personal property that we have just held is not employed in the state, is owned and held here in just the same sense as the rolling stock, and why this property is employed outside the state, and all the rolling stock within the state is not made very clear to me, and, therefore, I am in favor of accepting the finding of the trial court that a certain and designated part of the cars and engines of the relator are employed outside of the state.

(3) The learned court below found that three other items of the relator's property, amounting in the aggregate to $1,236,871.17, was not capital at all, or at least was not employed in this state. This general item was made up of the sum of $965,217.97 for " anticipated dividends " on stock of other corporations which the relator owned. The dividends had not been declared, and were, therefore, a mere incident to the stock. It seems to be conceded by both parties that this item was properly excluded. The second item embraced in the general amount above stated was $171,653.20 for bills receivable. This sum appears to have been made up of expenditures by the relator on leased lines. No direct return is expected for these expenditures and the relator holds no obligation for reimbursement, although carried on the books as " Bills receivable," and so the court below properly held that this item constituted no part of the relator's property within this state for the purposes of the franchise tax. The third item entering into the general sum above stated was $100,000 for coal and supplies without the state. It is hardly conceivable that all the coal which the relator uses in the operation of its railroad can be said to be employed within

this state, and so this item was properly found to be property not employed in this state. There was no error in the decision of the court below excluding these three items from the calculation.

(4) The relator owned $2,597,400 of the capital stock of the Merchants Dispatch Transportation Company, a domestic corporation engaged in the transportation business. Eighty-nine per cent of that amount, or $2,311,686, represented business of that company outside the state, and although these facts are found by the learned court below, it included the latter amount in its valuation of the relator's property employed within this state. Since the relator's holdings in this company were employed outside the state we think they should not be included in the calculation under the authorities cited above. It is very difficult to see how a distinction was made between those items and the other items referred to which the learned court below excluded. It seems to have been assumed that since this stock was that of a domestic corporation it constituted a part of the relator's property employed in this state; but, as already observed, the legal *situs* of the property does not determine the question, and since the learned court below found that the transportation company that issued the stock employed the capital represented thereby outside the state it is difficult to understand how the relator, by the mere fact of its ownership of the stock, could employ the capital represented by it in this state. With respect to this item, we think that the decision of the learned court below should be corrected by the proper modification.

By a process of calculation which is not questioned here by either party, except as to the matters above referred to, the learned court below found, as stated in the opinion, that the amount of the relator's capital employed within this state upon which the tax should be computed was $90,151,825.98, but since that amount was the result of an error in including a portion of the stock of the transportation company employed without the state, namely, the sum of $2,311,686, the calculation and estimate should be corrected upon the principles

adopted as to the other items, and this process, which seems to have been finally adopted by the court below in the official report of the case, will give the following result: The percentage of its entire capital employed within the state during the year was .60702, or over sixty per cent. The average amount of its entire capital stock at par was $108,750,000, and the average share price was $129.8125, making the average value for the average amount of stock $141,171,093.75, and the amount upon which the tax of one and one-half mills should be computed $85,694,383.18, and the amount of the tax $128,541.57. There is a material discrepancy between the amount upon which the tax is to be computed as stated in the opinion of the learned court below and that stated in the findings. In the former, as already observed, the amount stated as the basis of the tax is $90,151,825.98 and the tax $136,227.73, while the actual finding of the court is that the amount upon which the tax should have been and should be computed is $86,659,287.62, and the tax should have been and should be $129,988.93. The discrepancy may, no doubt, be accounted for by assuming that the court below, in making up the judgment, did not follow the opinion. However that may be, it will be seen that the result expressed in the findings below makes the tax somewhat larger than the result at which we have arrived. The opinion of the court below as found in the record differs materially from that contained in the official report of the case (75 App. Div. 169). In the latter the case seems to be decided upon the principles herein stated, the slight differences in results being due to an error in the figures.

The order of the Appellate Division should be modified accordingly, with costs to the relator in this court.

PARKER, Ch. J., BARTLETT, MARTIN and CULLEN, JJ., concur with HAIGHT, J.; O'BRIEN, J., reads for modification of order; VANN, J., absent.

Ordered accordingly.