THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE
    MANILA ELECTRIC RAILROAD AND LIGHTING COR-
    PORATION, Appellant, v. WALTER H. KNAPP et al.,
    Constituting the State Tax Commission, Respondents.

Tax — foreign corporations — license fee and franchise tax —
deposit by foreign corporation with local trust company of
collateral as security for its bonds, the maintenance of an
office and conduct of its internal affairs and the occasional
making of loans to other foreign corporations does not con-
stitute " doing business " within the state.

1. Unless the doing of business and employment of capital by a
foreign corporation exists concurrently, the state tax commission has
no power to exact a license fee under section 181 or assess a franchise
tax under section 182 of the Tax Law.

2. The execution by a foreign corporation of a trust agreement with
a local trust company, as trustee, and the depositing with the trustee
of bonds and obligations of other foreign corporations, for the purpose,
as provided in the trust agreement, of collaterally securing the payment
of bonds issued by the depositor is not the statutory doing of business
in this state.   Nor is the permitting of the deposits to remain with
the trustee, under such agreement, nor the use and occupation of an
office in this state for and the exercise there of the management or
conducting in whole or in part of its internal affairs within the intend-
ment of the Tax Law the doing business within this state.   Such
activities are merely incidental to the corporate organization and the
ownership of corporate assets and are not exercised for the purpose of
continued efforts in the pursuit of profit and gain which is the test of
the " doing of business."   (Von Baumbach v. Sargent Land Co., 242
U. S. 503; People ex rel. Chicago Junction Railways & Union Stock-
yards Co. v. Roberts, 154 N. Y. 1, followed.)

3. The fact that the relator loaned or advanced moneys to foreign
corporations in which it was a shareholder does not justify a license fee
or tax where, as in this case, such loans lacked the systemization,
definiteness and continuity which are essential characteristics of doing
business within the purview of the Tax Law.

4. A contention that the relator must be doing business in New
York because it was not doing business elsewhere, cannot be sustained.
A corporation is no more bound to pursue the activities of business
than is the private citizen.   It may, as may he, enter into and then

retire from business or refrain from business. Nor is every exercise of its chartered powers and purposes the doing of business within the purview of the Tax Law.

*People ex rel. Manila El. R. R. & L. Co.* v. *Knapp*, 191 App. Div. 132, reversed.

(Argued October 5, 1920; decided November 16, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 23, 1920, which confirmed, on certiorari, a determination of the state tax commission imposing upon the relator a license fee under the provisions of section 181 and a franchise tax under the provisions of section 182 of the Tax Law based upon business done and capital employed within the state for the year ending October 31, 1916.

The facts, so far as material, are stated in the opinion.

*John Freeman Day* for appellant. To be subject to tax under section 182 of the Tax Law, a corporation must both do business and employ capital within the state of New York. (*People ex rel. Harlan & Hollingsworth Co.* v. *Campbell*, 139 N. Y. 68; *People ex rel. Chicago Junction Railways, etc., Co.,* v. *Roberts*, 154 N. Y. 1.) The relator employed no part of its capital stock within this state during the year ended October 31, 1916. (*People ex rel. C. J. R. & U. S. Co.* v. *Roberts*, 154 N. Y. 1; *People ex rel. S. Mfg. Co.* v. *Wemple*, 150 N. Y. 46; *People ex rel. Edison El. Light Co.* v. *Campbell*, 138 N. Y. 543; *People ex rel. U. F. Co.* v. *Roberts*, 66 App. Div. 157.) The relator has never done and is not now doing business in New York. (*People ex rel. Dives-Pelican Co.* v. *Feitner*, 77 App. Div. 189; *People* v. *Horn Silver Mining Co.*, 105 N. Y. 76; *Honeyman* v. *Colorado Fuel & Iron Co.*, 133 Fed. Rep. 96; *People ex rel. Edison L. & P. Co.* v. *Kelsey*, 101 App. Div. 205; *McCoach* v. *Minehill Ry. Co.*, 228 U. S. 295; *United States* v. *Emery B. T. Realty Co.,* 237 U. S. 28; *Von Baumbach* v. *Sargent*

*Land Co.*, 242 U. S. 503; *United States* v. *Nipissing Mines Co.*, 206 Fed. Rep. 431; *United States* v. *Butterick Co.*, 240 Fed. Rep. 539; *People ex rel. L. & N. Y. R. R. Co.* v. *Sohmer*, 217 N. Y. 443; *People ex rel. Ridgewood L. & I. Co.* v. *Saxe*, 174 App. Div. 344; 219 N. Y. 637.)

*Charles D. Newton*, Attorney-General (*C. T. Dawes* of counsel), for respondents. The relator within the terms of sections 181 and 182 of the Tax Law was doing business in New York, and was employing its capital in New York. (*People ex rel. Edison El. L. Co.* v. *Campbell*, 138 N. Y. 543; *People* v. *Campbell*, 88 Hun, 554; *People ex rel. N. E. Loan Co.* v. *Roberts*, 25 App. Div. 16; 156 N. Y. 688; *People ex rel. C. J. R. & U. Stockyards* v. *Roberts*, 154 N. Y. 1.)

COLLIN, J. The relator, The Manila Electric Railroad and Lighting Corporation, a foreign corporation, seeks in this certiorari proceeding (Tax Law, section 199) to annul the determination of the state tax commission imposing upon it a license fee under the provisions of section 181 and a franchise tax under the provisions of section 182 of the Tax Law, based on business for the year ending October 31, 1916. The Appellate Division, upon the appeal of the relator, confirmed by a non-unanimous decision the determination.

There is not contradiction concerning the facts. In virtue of them and the provisions of the statute we are to determine whether or not the relator during the year ending October 31, 1916, did business and employed capital within this state. Unless those two conditions existed concurrently the tax commission had not the power to exact the fee or to assess and tax the relator under the sections. This conclusion applies to each section and arises from the statutory language. (*People ex rel. Chicago Junction Railways & Union Stockyards Co.* v. *Roberts*, 154 N. Y. 1; *People ex rel. Vandervoort Realty*

*Co.* v. *Glynn,* 194 N. Y. 387.) Section 181, in so far as relevant to the issues here, provides: " Every foreign corporation, * * * doing business in this state, shall pay to the state treasurer, for the use of the state, a ·license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, to be computed upon the basis of the capital stock employed by it within this state, during the first year of carrying on its business in this state; which first payment shall not be less than ten dollars; and if any year thereafter any such corporation shall employ more than eight thousand dollars of its capital stock within this state on which a license fee has not been paid then a license fee at the rate of one-eighth of one per centum shall be due and payable upon any such increase. The measure of the amount of capital stock employed in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business. For purposes of taxation, the capital .of a corporation invested in the stock of another corporation shall be deemed to be assets located where the physical property represented by such stock is located. * * * "

Section 182, in so far as relevant, provides: " * * * For the purpose of doing business in this state, every foreign corporation, * * * shall pay to the state treasurer annually, in advance, an ' annual tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this state, and upon each dollar of such amount. * * * "

The relator was incorporated in 1903 under the statutes of Connecticut. Its chartered purposes are various and broad. In general effect they are: To own or lease and operate in the Philippine Islands or elsewhere (except within the state of Connecticut), railroads of any description; to own or lease and operate power and electric

plants and vessels of any kind and engage in any transportation business and all franchises, concessions or rights for those purposes; to acquire, hold or dispose of any obligations or shares of stock of any corporation of any state or country, and to aid in any manner any corporation, obligations or shares of stock of which are held by it, or do any acts designed to protect or enhance the value of the obligations or shares; to acquire, hold and dispose of all property and carry on the operations necessary or convenient for the accomplishment of those purposes; to guarantee the payment of the obligations or stock dividends of other corporations, and to carry out those chartered purposes in the United States or foreign countries. Its chartered principal office or place of business is Hartford, Connecticut. In 1903 the relator issued the entire of the shares of its stock which were outstanding in 1916, and issued, also, bonds in the face amount of $3,250,000. Those shares and those bonds were issued and delivered to the Manila Construction Company, a foreign corporation, in exchange for the bonds of the face value of $3,000,000 and shares of stock of the face value of $1,000,000 and other stock or assets of certain foreign corporations of which were, or became through succession, Manila Electric Railroad and Light Company, a New Jersey corporation, and Manila Suburban Railways Company, a Connecticut corporation. In 1903 under a trust indenture it deposited with the Equitable Trust Company of the city of New York, as trustee, the $3,000,000 face value of bonds as security for the payment of the bonds issued by it, and in 1906 it deposited with that company for that purpose the promissory note of Manila Electric Railroad and Light Company in the sum of $594,000 owned by it. Those deposits remained and existed through 1916. Each of the Manila Electric Railroad and Light Company (the New Jersey corporation) and Manila Suburban Railways Company (the Connecticut corporation) owned and operated a

street surface railway in or near Manila, Philippine Islands. They possessed and operated exclusively their properties, and their properties and business are located exclusively in the Philippine Islands. Through 1916 the relator's average bank and cash balance in New York was $33,257.11, derived from interest on the bonds and dividends on the stocks of the companies operating in the Philippine Islands. The relator did not have a bank account elsewhere. The relator did not have within that year in the state of New York any property or assets other than the bonds and note deposited with the Equitable Trust Company as trustee and the bank and cash balance. It owned no real estate or tangible property. It did not own any stock of a corporation organized under the laws of New York. It had never obtained authority under the General Corporation Law to do business in the state of New York. The Manila Electric Railroad and Light Company and Manila Suburban Railways Company and the relator prior to 1916 entered into an arrangement with the J. G. White Management Corporation of New York city in virtue of which the office of the management corporation was the office in New York at which the relator held the meetings of its board of directors, paid the interest on its bonds and declared and paid dividends on its stock. The management corporation were the general managers and purchasing agents in New York of the two companies operating in the Philippine Islands. The relator loaned or advanced moneys to those companies under the direction of the management corporation. The evidence does not disclose any specific loan and our last statement is based upon the testimony of the secretary and treasurer of the relator to the effect: the relator controls and finances those companies; the bills receivable of the relator in the sum of $126,071.68 were either for moneys advanced or interest due or dividends declared and not paid, and the officers of the relator act under the direction of the management corpora-

tion in New York city. The president of the relator was a resident of Connecticut, the vice-president, the secretary and treasurer, and the assistant secretary and treasurer were located in New York city. The meetings of the stockholders were held at the chartered office of Hartford, Connecticut. Such were the acts of the relator as disclosed by the record. From them we must determine the questions involved. (*People* v. *American Bell Telephone Company,* 117 N. Y. 241.)

The relator was not doing business in this state within the legislative and statutory intendment. The condition of doing business in this state, within that intendment, implies that the foreign corporation is accomplishing acts and activities within the state which the state might reasonably and with ordinary interstate comity interdict or prevent and the doing of which was a privilege which required governmental consent, supervision and control and which necessitated or sought governmental opportunity and protection to be compensated or balanced by contributions through taxation to the burden of government. (*Hovey* v. *De Long Hook & Eye Co.,* 211 N. Y. 420; *Penn Collieries Co.* v. *McKeever,* 183 N. Y. 98; *People ex rel. Lehigh & New York Railroad Co.* v. *Sohmer,* 217 N. Y. 443; *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503.) The license fee is the charge made upon and for the granting of the privilege of doing business in this state with the protection of our laws and the financial and other advantages of a situation here. The franchise tax is the charge upon the privilege granted when and as exercised. The execution in 1903 of the trust agreement between the relator and the Equitable Trust Company of New York, as trustee, and the depositing by the relator in 1903 and 1906 with the trustee of the bonds and obligations of the foreign corporations, for the purpose as provided in the trust agreement of collaterally securing the payment of the bonds issued by the relator, was, manifestly and beyond the need of reason-

ing and discussion, not the statutory doing of business in this state. (*People ex rel. New York Central & H. R. R. R. Co.* v. *Knight*, 173 N. Y. 255, 260; *Cummer Lumber Co.* v. *Associated Manufacturers' Mutual Fire Ins. Corp.*, 67 App. Div. 151; affd., 173 N. Y. 633; *Union Trust Company of Rochester* v. *Sickels*, 125 App. Div. 105.) Those acts were not pursuant to or dependent upon a privilege and did not subject the relator to or legalize the imposition of a license fee. Adverting to the acts and activities of the relator within this state during the year ending October 31, 1916, it is equally manifest that permitting the deposits to remain with the trustee under the agreement of 1903 was not the doing of business in this state or a component of such condition. Nor did the acts of the relator constitute such condition. The assets of the relator consisted of the shares of stock and the obligations of other corporations, foreign in their origin, property and operations, from which, in interest and dividends, its entire income was derived. In New York city it received, deposited and distributed that income to those entitled. In New York city it held meetings of its directors. Each of those activities might as effectively, though not as conveniently, perhaps, have been done at the statutory office of Hartford. In the world of business and industry it would not have been thought that they were subject to the interdiction or required for their validity or regularity the franchise of the state. The use or occupation by a foreign corporation of an office in this state for and the exercise there of the management or conducting in whole or in part of its internal affairs is not within the intendment of the Tax Law the doing of business in this state. A foreign corporation may be within this state for corporate purposes and not be doing business here within the meaning of taxing statutes. In *Von Baumbach* v. *Sargent Land Co.* (242 U. S. 503) are reviewed certain decisions of the Federal Supreme Court concerning the meaning of the term "engaged in

**510** People ex rel. Manila El. R. R. & L. Co. *v.* Knapp.

[229 N. Y.] Opinion, per Collin, J. [Nov.,

business in any state " as used in the federal corporation tax law. Those decisions considered as synonymous the terms " engaged in business," " carrying on business " and " doing business," as used in taxing statutes. The court said of those decisions: " The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." (p. 516.) The test is applicable to the sections of the statute we are considering. The activities of the relator last referred to related to the management of its internal affairs, the owning and holding of property and the distribution of its avails and were not exercised " for the purpose of continued efforts in the pursuit of profit and gain." (*People ex rel. Lehigh & New York Railroad Company* v. *Sohmer,* 217 N. Y. 443; *People ex rel. Tower Co.* v. *Wells,* 98 App. Div. 82; affd., on opinion below, 182 N. Y. 553; *People ex rel. Dives-Pelican Mining Co.* v. *Feitner,* 77 App. Div. 189; *People* v. *Horn Silver Mining Co.,* 105 N. Y. 76, 83; *People ex rel. Ridgewood Land & Improvement Co.* v. *Saxe,* 174 App. Div. 344; affd., 219 N. Y. 637; *United States* v. *Nipissing Mines Co.,* 206 Fed. Rep. 431.) Such activities are merely incidental to its corporate organization and the ownership of corporate assets. In *People ex rel. Chicago Junction Railways & U. S. Co.* v. *Roberts* (154 N. Y. 1) the facts were in their significance and effect quite similar to those of the instant case. We did not decide whether or not the foreign corporation was within the intendment of the statute doing business in this state and did decide that the corporation did not employ any part of its capital in this state. Prevailing opinions, concurred in by Judge O'Brien and Judge Bartlett, were written

by Chief Judge ANDREWS and Judge GRAY.   Chief Judge
ANDREWS said: " It .may be conceded that the relator in
keeping an office in the city of New York, where it received
and disbursed its income derived from its investment in
the Illinois corporation, depositing it in bank and drawing
upon the deposit for the payment of its obligations,
dividends to its shareholders and disbursements in main-
taining its office, was doing a part of its appropriate func-
tion as an investment company, and that this was 'doing
business within this state' which satisfied that condition of
the statute." (p. 5.) Judge GRAY said: " Whether the
relator was doing business here, or what that business may
have been, I do not consider important to discuss." (p. 7.)
There remains to be considered the fact that the relator
loaned or advanced moneys to the foreign corporations
operating in the Philippine Islands.   It is quite unreason-
able and unnatural to assert that a shareholder in a
foreign corporation is doing business in this state, within
the Tax Law, through or in virtue of the fact that he
loaned to the corporation without the state or through
its agent within the state money in the manner which
may be inferred by the evidence here.   The loans of the
relator lacked the systematization, definiteness and
continuity which are the essential characteristics of doing
business within the purview of the Tax Law.

It is not correct reasoning to assert that the relator
must be doing business in New York because it was not.
doing business in New Jersey.   A corporation is not more
bound to pursue the activities of business than is the
private citizen.   It may, as may he, enter into and then
retire from business, or refrain from business.   Nor is
every exercise of its chartered powers and purposes the
doing of business within the purview of the Tax Law.
We hold that under the facts presented the relator was
not within the year ending October 31, 1916, doing
business in this state within the intendment of sections
181 and 182 of the Tax Law.

Less disputable is the conclusion that the relator did not employ any part of its capital stock within this state. The relator in 1903 sent or invested the entire of its issued capital stock for employment in the Philippine Islands. The assets it thus acquired were, in effect, deposited in a safety deposit vault. They were removed from business as effectively as though in the safety vault in Manila or the state of New Jersey. They were passive. They maintained or aided no enterprise or activity in this state. The acts of the relator within this state did not require the use here of any part of its capital. It employed or used no moneys other than those derived as dividends or interest on the stocks or obligations of the foreign corporations operating wholly without this state; and, as a cumulative though immaterial fact, the use of those moneys is confined to the distribution of them to the persons entitled or to loans for employment without this state. The dividends or interest were not capitalized and were not capital stock or capital. They were profits from capital. (*People ex rel. Chicago Junction Railways & U. S. Co.* v. *Roberts,* 154 N. Y. 1.)

The order of the Appellate Division should be reversed, with costs in all the courts, and the determination of the tax commission annulled.

Hiscock, Ch. J., McLaughlin, Crane and Andrews, JJ., concur; Cardozo, J., concurs in the result on the ground that the evidence fails to show such continuity of financial management by the relator as would justify the conclusion that it was engaged in business within the state during the year covered by the assessment; Chase, J., dissents.

Order reversed, etc.