HENRY ELSNER,

*vs.*

UNITED AMERICAN UTILITIES, INCORPORATED, a corporation of the State of Delaware.

*New Castle, July* 31, 1935.

*Edward J. Grogan, Jr.,* Assistant Attorney General, of Albany, N. Y., for the State of New York.

*Clarence A. Southerland* of the firm of Ward & Gray, and *Irwin L. Tappen,* of New York City, for receivers.

THE CHANCELLOR: The claim is based on provisions of the Tax Law of New York (*Consol. Laws, c.* 60). This court has no knowledge of the laws of another state except as the same are pleaded and proved as a fact in the case. Nowhere in the record do I find where any statute of New York has been pleaded. The claim is in the form of a notice that taxes and a license fee are due, and on the back of the notice there is a printed notation that the amount shown is in preference of all other claims against the defendant. The notice states that the franchise taxes are due under provisions of *article* 9-A of the *Tax Law,* and the license is due

under the provisions of *article* 9, § 181, of the *Tax Law*. What these provisions are, is neither shown by the notice nor disclosed by the evidence.

On the brief filed by the solicitor for the claimant there are quotations from *sections* 181, 208 and 209 of the *New York Tax Law*. Whether these sections are a part of *article* 9 (*section* 180 *et seq.*) or of *article* 9-A (*section* 208 *et seq.*) of the statute referred to in the notice of claim, I do not know. No point has been made by the solicitors for the receivers to the effect that the New York statute has not been properly pleaded and introduced in evidence. I shall assume then that the quotations in the brief filed in behalf of the State of New York are correct extracts from the New York statute and that by tacit agreement they may be considered as though they were properly in the record.

But the extracts make no reference to the creation of a preference. I shall therefore disregard any claim of preference.

The solicitor for the State of New York makes the contention that this corporation had assets in New York which the receivers removed to Delaware, that the New York law imposes a lien on assets located in the New York jurisdiction, that the assets came into the possession of the receivers in Delaware burdened with that lien and that the case is therefore one, not where one state is asked to serve as tax collector for another, but one where assets are being followed to enforce a lawfully imposed lien. The trouble with this contention, aside from other possible considerations, is that the record fails to show that the New York law undertook to impose any lien upon the assets. The quoted extracts found on the brief do not contain any reference to a lien. The statement on the reverse of the notice of claim makes no assertion of a lien. It claims only "a preference over and above all the debts of the respondent and claims submitted" against it. A preference claim is not necessarily a lien. *Seymour v. Berg,* 227 *Ill.* 411, 81 *N. E.*

339, 10 *Ann. Cas.* 340. The contention, therefore, that the State of New York possesses a lien on the assets is not acceptable.

The solicitor representing the claimant appears to lay stress upon the fact that the receivers removed the cash and securities which the corporation had in New York to Delaware, thereby making it impossible for the State of New York to assert jurisdiction over the assets. If, says the solicitor for the State of New York, the receivers had applied for ancillary receivers in New York, the assets then in that state would have been there administered and the claim for taxes would have been in a position to be enforced in the taxing jurisdiction. That is quite true. But I know of no duty resting on the receivers here to apply for ancillary receivers. They had authority to do so if necessary. If there was no administrative necessity for ancillary aid, it would have been a needless expense to seek it. The receivers were as free to remove the assets, there being no obstacle in the way, as the corporation would have been. If thereby the tax claim was made difficult of collection, the result, though unfortunate, was merely incidental.

The receivers contend that as the license fee and the franchise taxes which the New York law imposes on foreign corporations are imposed in the one case for the privilege of "carrying on business" and in the other for "doing business" in the State of New York, and as the defendant corporation did not carry on or do business in that State within the meaning of the New York law, a license fee and franchise taxes were not assessable. The master upheld this contention.

It is conceded that the claim has no basis of merit unless it be shown that the corporation did business in New York during the years covered by the claim. The license fee is claimed in the sum of $12,610.86. Franchise taxes are claimed for the years 1929, 1930, 1931 and 1932, in the respective amounts of $1,613.73, $5,026.83, $6,509.20 and $4,066.86.

Was this corporation engaged in doing business in New York? The corporation was organized under the laws of this state on August 29, 1929. It never applied for permission from the State of New York to do business in that state. That is admitted. That fact, however, does not permit the corporation to escape from the tax, if otherwise it is assessable. *People v. Tropical Fruit Corp.*, 223 *App. Div.* 864, 228 *N. Y. S.* 189, affirmed 252 *N. Y.* 605, 170 *N. E.* 160.

The corporation's business interests were in the utility field. In 1929 it acquired about thirty per cent. of the stock of a Delaware corporation called Eastern States Public Service Company, which in turn owned practically all of the stock of Atlantic Public Utilities, Inc., a Delaware corporation which was the top holding company in a rather large utility system operating many public utility companies located in various states. None of these utilities was operated in New York State and none of the physical properties owned by them was located in that state. The defendant was one of the so-called "Fitkin" companies. While its ownership in Eastern States was a thirty per cent. minority interest, yet through its association with the Fitkin group, it was an important if not the controlling influence in Eastern States and through it of the Atlantic Public Utilities system. Through Eastern States, the defendant prior to July, 1930 advanced $4,172,123.74 to the Atlantic Public Utilities system. Early in 1930, it became the direct or indirect owner of practically all the stock of two corporations (not of New York) which were holding companies for various truck lines operating in California, at a cost of $1,947,435.32. These investments in Eastern States and Pacific Freight Lines comprised by far the major portion of the defendant's assets. Its balance sheet of December 31, 1930, shows assets of $12,322,287.85 of which only about six and one-half per cent. consisted of securities other than the above. The balance sheet of December 31, 1931, shows about thirteen per cent. and the balance sheet of December 31, 1932, about six per cent. of the total assets to consist of

investments other than in Eastern States and Pacific Freight Lines. I gather that the defendant during the years of its activity was mainly engaged in acquiring its two principal investments and in financing their needs. When any of its funds were not in immediate demand for the purposes of its two principal projects, they were temporarily invested in other securities which were sold as the occasion for cash requirements arose.

The defendant had office space, together with other companies, in the Fitkin suite in New York City, for which it paid a portion of the rental. Its address was 39 Broadway. It held no lease. It had no office furniture. Its books of account were kept in the Fitkin office. These books were "practically a control record * * * of the company's interests in other states, California principally." It maintained a bank account in New York City. It maintained a statutory office in Wilmington, Delaware. It owned no real estate or other tangible property in New York.

Now under the foregoing state of facts, can it be said that the defendant was engaged in "doing business" or "carrying on business" in New York? The case of *People ex rel. Manila El. R. R. & Light Corp. v. Knapp,* 229 *N. Y.* 502, 128 *N. E.* 892, 895, answers that question in the negative. The court observed in that case that "carrying on business" and "doing business" as used in the New York tax law are synonymous terms. The fair test of whether a corporation is carrying on business or doing business within the meaning of the taxing statutes of New York, was said by the Court of Appeals of New York in the cited case to be on the one hand "between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status" and on the other, "one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." It may be said of this corporation, as it was said

by the Court of Appeals of the corporation in the *Manila Electric R. R. & Light Co. Case,* that its "activities * * * related to the management of its internal affairs, the owning and holding of property * * * and were not exercised 'for the purpose of continued efforts in the pursuit of profit and gain.' * * * Such activities are merely incidental to its corporate organization and the ownership of corporate assets." The court also observed in that case what might with equal truth be observed in this one, that each of its activities "might as effectively, though not as conveniently, perhaps, have been done at the statutory office" of the corporation in the state of its domicile. In this case as in the *Manila Electric Case,* the acts of the corporation within the State of New York neither maintained nor aided any enterprise or activity in that state, nor was any of its capital required by its activities to be employed or used in New York. Indeed the parallel is close, without pursuing it further, between the facts of this case and the facts found in the *Manila Electric Case* and we have the judgment of the court of last resort in New York itself that those facts do not amount to the "carrying on" or the "doing of" business within the meaning of the New York law. If it be said that the making in New York of a few relatively minor investments by this corporation in stock exchange securities is a feature that was absent in the *Manila Electric Case,* and that therefore the two cases are distinguishable, the answer is that the making of investments in such securities is not the doing of business within the meaning of the New York taxing statute. *People ex rel. Merrill v. Gilchrist,* 212 *App. Div.* 763, 210 *N. Y. S.* 385. The principal business of the defendant was not that of buying and selling securities. Neither is it sufficient to argue that if the corporation is not shown to have been doing business elsewhere, it must have done business in New York where it had an office as shown by its letterheads. *People ex rel. Manila El. R. R. & Light Corp. v. Knapp, supra.*

I conclude that by the test laid down by the courts of

New York itself this corporation did not do business in that state within the meaning of the New York tax law at any time since its incorporation.

The solicitor for New York, however, relies on the fact that the treasurer of the corporation filed a return for it before the New York Department of Taxation and Finance for the year 1931 and in said return stated that the corporation began business in New York on September 13, 1929. It is contended that this statement is conclusive of the fact that the corporation did business in New York and that the receivers cannot be heard to deny it. That the statement is an admission cannot be controverted. But, being the statement of the treasurer only, it should not be accepted as conclusive. If it is shown, as it has been, that the treasurer was in error in point of fact, his admission may and should be disregarded. A mistake, where no prejudice is worked can neither give rise to a right nor impose a liability. That the treasurer was not informed concerning the corporation's activities in New York is shown not only by the exposure of his error in the matter of its "doing business" in that state, but as well by his statement in the same return to the effect that the corporation had been legally authorized to do business in that state. The fact is admitted that the corporation had never been authorized to do business in New York.

The exceptions to the master's report will be overruled and the report approved.

Order accordingly.

NOTE. On appeal the order of the Chancellor was affirmed without opinion.