## Commonwealth v. The Mundy Corp.

*James J. Dougherty*, of *Scholl & Dougherty*, and *Joseph P. Gaffney*, for appellant.

*Frank A. Sinon*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

RICHARDS, P. J., O. C., specially presiding, June 23, 1941.—This is an appeal by defendant from the settlement of its franchise tax for the year 1935, amounting to $4,649.79. The case was tried by the court without a jury pursuant to stipulation filed. The settlement was made under the Act of May 16, 1935, P. L. 184, 72 PS §1871.

*Facts*

Defendant is a Delaware corporation which had registered to do a real estate, construction, and contracting business in Pennsylvania. It actually engaged in the real estate business during 1935, but did not engage in any contracting or construction work. It had a broad charter which, inter alia, authorized it to act as a holding company of other securities. It owned United States Government bonds, bonds of the Commonwealth of Pennsylvania, bonds of Pennsylvania municipalities, bonds of the City of New York, bonds of two railroad corporations, a mortgage bond, and some stock in the Arundel Corporation. The actual value of these securities is stated to be $835,853.38. The bulk of them had been obtained some years ago. There was no selling and dealing in securities. The only changes made were due to the calling or maturing of issues and the substitution of others in lieu thereof, plus the acquisition of a few additional holdings.

Defendant had its principal office in Philadelphia where all its stockholders' and directors' meetings were held. All corporate records were kept there and such business as it transacted was transacted there. Its income was deposited in Philadelphia banks and disburse-

ments made therefrom. Its securities were kept in safety deposit vaults in Philadelphia, interest and dividends received there, and dividends paid there. It had a statutory office in Delaware but conducted no activities there.

Its tax report for 1935 gave the value of its capital stock as $947,946, which figure was accepted by the Commonwealth. It is now conceded by the parties that the allocation fractions should be for (1) Tangible property $\dfrac{96,898}{96,898}$; (2) for wages $\dfrac{11,445}{11,445}$; and (3) for gross receipts $\dfrac{10,123}{41,428}$. The only controversy relates to the value of the capital stock.

The Commonwealth contends: (1) That all of defendant's business was conducted in Pennsylvania and that the measure of the tax is the entire capital stock value, including the aforementioned securities; (2) that the securities had a business situs in Pennsylvania; (3) that the securities were related with and appurtenant to the business conducted by defendant in this State; and (4) that defendant was conducting a holding company business in this State.

Defendant contends: (1) That the securities should be excluded from the capital stock value; (2) that the securities had a situs in Delaware; (3) that it was not conducting a holding company business; and (4) that the inclusion of certain of the securities in the measure of the tax would be unconstitutional.

### Discussion

The Supreme Court of Pennsylvania has already laid down some principles applicable to this case. In Commonwealth v. Columbia Gas & Electric Corp, 336 Pa. 209, that court was dealing with a holding company which did not function as such within this State

but which did perform other functions as an operating company here. In the opinion written by Mr. Chief Justice Kephart, it was stated (pp. 224-26) :

"Appellee performs only a part of its functions within the state, and in connection therewith, employs a part of its tangible and some intangible property. Under the principles relating to corporations engaging in multiform business and considering that only part of appellee's business is conducted in Pennsylvania, as far as the capital stock value is related to tangible and intangible property, *only such tangibles and intangibles should be taken into account as are concerned with the functions exercised within the state.* The facts show under appellee's certificate it is permitted to and has actually limited its business to that of a manufacturing or operating company. The vast amount of its property consists of intangibles used in connection with its holding company business. The record does not disclose satisfactorily that it performs any part of that business within this State. Its power to act as a holding company is authorized under the laws of Delaware. It is obvious therefore that to include within the taxable measure all the property used in connection with this function would be to levy a franchise tax having no relation *to the privilege granted by* this State to appellee as an operating company or *to any function actually performed herein.* . . .

"By these principles it is obvious that since the tax is nothing but one upon the value of a privilege and the taxable measure is fundamentally the capital stock used in connection with that privilege, *we must for the purpose of determining the validity of the tax separate from it that capital stock value which bears no relation to the privilege.* In determining the franchise tax to be levied on the Columbia Gas and Electric Company, the value of its assets represented by capital stock used in connection with its holding company business should have been excluded by the taxing officials. In so hold-

ing it is to be understood that not all intangibles are to be disregarded for, to the extent that intangibles enter into the exercise of the franchise conferred by this state or privileges actually exercised within the state, such intangible value must properly be included." (Italics supplied.)

It thus appears that the capital stock value in a case such as this may include only such tangibles and intangibles as are concerned with the functions exercised within the State. What is included must have some relation to the privilege granted by this State or to a function performed within the State.

We confess that we are unable to see that these securities have any connection with the real estate business which defendant was admittedly conducting here during the tax year. They were in no way incidental or appurtenant to that business. The income from the securities was no doubt the source of funds from which dividends were paid to defendant's stockholders. But this income was not necessary to the conduct of the real estate business. Other capital of defendant was invested in the real estate venture. It was amply sufficient for the purpose. Only one small mortgage was upon its real estate holdings. It had additional borrowing capacity on its real estate which could be used should occasion require it. Thus the real estate business was solvent and self-sustaining without regard to the securities held. Nor can it be said that the securities represented a reserve for the real estate business. They were not investments made from income accumulated from said business nor from sale of real estate holdings. They were investments of capital made shortly after incorporation and organization. The funds so invested had never been devoted to any business activity defendant was authorized to conduct, unless such investment be construed as a security or holding business. They were at all times subject to conversion into cash for use in any legitimate business in which defend-

ant might see fit to engage. This might be contracting, construction, real estate, or something else. This being the case, we do not see how we can hold that the securities are specifically a reserve for the real estate business alone. It is our conclusion that these securities had no connection whatever with the real estate business.

We shall next consider whether or not defendant is conducting a holding company business. Its charter permits it to do so. Whether or not it is so engaged is a different matter.

A holding company is one whose charter permits it to hold the stock of other corporations: 6 Fletcher Cyclopedia Corporations (perm. ed.), §2821, p. 712. It may or may not actually control the corporations whose stock it holds. Frequently the corporations whose stock is held are called subsidiaries. The stipulation of facts, paragraph 5, reveals that the only stock held was that of the Arundel Corporation, in the amount of $52,981. There is nothing to indicate that this company is a subsidiary of appellant. The other securities involved are bonds. None of these are bonds of a subsidiary or of any corporation under the control of defendant. Many of them are municipal, city, State and Government bonds. The right to own these investments is not derived from the charter power to act as a holding company of other securities. The right exists independently thereof. It is based upon the mere fact of corporate existence. These securities could have been purchased and held by defendant even though its charter did not authorize it to hold other securities. We fail to see anything in the record to demonstrate that appellant was functioning as a holding company, either in this State or in the State of its incorporation.

The question then arises as to whether or not the activities of defendant with reference to these securities constitute the doing of business. It must be remembered that the securities were acquired by defendant early in its corporate existence. The capital used for

their purchase had never been applied to any other corporate use. It represented an investment of idle corporate funds in convertible securities. The capital thus invested was readily available for any corporate use. But no other use was ever made of it. There was no dealing in securities. They were owned, the interest and dividends collected, and the proceeds distributed to the stockholders of defendant. The activities incident thereto occurred in Pennsylvania. Did this constitute the doing of business?

In Von Baumbach, etc., v. Sargent Land Co., 242 U. S. 503, 515, the Supreme Court of the United States was considering what constitutes the doing of business. It was stated that business is " 'that which occupies the time, attention and labor of men for the purpose of livelihood or profit.' " After discussing its own prior decisions on what constitutes the doing of business, the court made the following comment (p. 516) :

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

It seems to us that defendant, from the beginning, reduced its activities with reference to the securities to the first category. All it did was to own the property, collect, and disburse the avails. We do not consider that the conduct of the real estate business by defendant has any bearing upon the solution of the problem. As to that it was unquestionably engaged in business in the pursuit of profit. But that does not prove that the securities were used in business.

We have carefully considered all the cases mentioned in the Commonwealth's brief. In Commonwealth v. Wilkes-Barre & Hazleton R. R. Co., 251 Pa. 6, defendant-owned the entire capital stock of three Pennsylvania corporations and defendant was definitely a holding company. In purchasing the stock of its subsidiaries it was plainly performing one of the direct objects of its incorporation.

We have been referred to Cheney Brothers Co. et al. v. Commonwealth of Massachusetts, 246 U. S. 147. On page 155 of the opinion there is a discussion of Copper Range Company. This was a Michigan holding company whose articles of incorporation contemplated that it should have an office in Boston. It performed corporate functions there. It was held that Massachusetts could exact a tax for the privilege. This is an example of a foreign holding company doing business in another State.

Simms Petroleum Co. v. Graves et al., 247 App. Div. 851, 286 N. Y. Supp. 686, involved a Delaware holding corporation, which had obtained a certificate of authority to do business in New York. It maintained an office there and transacted its principal business there. It owned the majority or all the stock of subsidiaries. It was held to be engaged in business in New York. We see no similarity between the facts of this case and the case at bar.

In People ex rel. v. Graves et al., 250 App. Div. 149, 294 N. Y. Supp. 995, a foreign corporation bought and sold stocks in New York, loaned money on call, kept money on deposit and performed other corporate functions. We agree that this constituted the doing of business but think the facts are entirely different from those we are considering.

In Queens Run Refractories Co., Inc., v. Commonwealth, 270 Mass. 19, 169 N. E. 515, a domestic corporation bought the stock of three Pennsylvania corporations and made loans to them as subsidiaries. This

was held to be the doing of business. Here the subsidiaries were engaged in business contributing to that of the parent. These circumstances are patently distinguishable.

Defendant has cited a number of cases dealing with situations where it was held that corporations were not doing business within the meaning of the tax statutes. Among them are Elsner v. United American Utilities, Inc., 21 Del. Ch. 73, 180 Atl. 589, People ex rel. v. Knapp et al., 229 N. Y. 502, 128 N. E. 892, United States v. Nipissing Mines Co., 206 Fed. 431, McCoach, etc., v. Minehill & Schuylkill Haven R. R. Co., 228 U. S. 306, and United States v. Three Forks Coal Co., 13 F. (2d) 631. We do not deem it necessary to discuss these cases. Generally they hold that the mere holding of assets and collection of income does not constitute the doing of business when the company is not engaged in some function for which it was incorporated.

It is our conclusion that the activities of defendant relating to these securities did not constitute the doing of business.

We think it is unnecessary to discuss at length the situs of the securities for tax purposes. It is conceded that usually their situs would be the domicile of the owner: see Callery's Appeal, 272 Pa. 255, 268. The Commonwealth has argued that in the present instance the securities have acquired a business or commercial situs in this State. We have already indicated our opinion that this conclusion is untenable. In addition, we note that, in the third allocation fraction, the Commonwealth has agreed that the income from these securities should not be included in the numerator. Since the numerator is the gross receipts assignable to Pennsylvania, the Commonwealth has itself attributed the income from the securities to Delaware and not to Pennsylvania. This, it seems to us, is a recognition of the fact that the tax situs of the securities is Delaware.

The act levies no direct tax on the securities. It is only when they are used in business here, or as incident

to a business conducted here, that they enter into the general capital stock valuation. Since we have decided that the securities have no relation to any function or business performed within this State, whether authorized by a certificate of authority or otherwise, we see no reason to discuss their situs any further.

Our determination also makes it unnecessary to discuss or decide the constitutional questions which were raised.

In addition to the facts mentioned in this opinion, we have acted upon the suggested findings of fact submitted by both parties and direct that they be filed of record. The same is true with respect to conclusions of law. Those which we have affirmed we adopt as the findings and conclusions of the court. In addition, we make the following conclusions of law by the court:

### Conclusions of law

1. The value of the securities owned by defendant should be excluded from the capital stock valuation.

2. The capital stock value, for the purpose of ascertaining the amount of tax due for the year 1935, is the total valuation of $947,946, less the value of the securities, $835,853, or $112,093.

3. The tax computation is as follows:

$$\frac{96,898}{96,898} \times \tfrac{1}{3} \text{ of } \$112,093 = \$37,364.00$$

$$\frac{11,445}{11,445} \times \tfrac{1}{3} \text{ of } \$112,093 = 37,364.00$$

$$\frac{10,123}{41,428} \times \tfrac{1}{3} \text{ of } \$112,093 = 9,130.00$$

Taxable value of capital
stock ............ $83,858.00

| | |
|---|---:|
| Tax at 5 mills . . . . . . . . . . . . | $419.29 |
| Interest at 6% from 60 days after January 13, 1937, or March 14, 1937, to June 23, 1941 . . . . . . . . . . . . . . | 107.56 |
| Attorney General's commission, 5% on $419.29 . . . . | 20.96 |
| Total due . . . . . . . . . . | $547.81 |

### *Decree nisi*

And now, to wit, June 23, 1941, judgment is hereby directed to be entered in favor of the Commonwealth and against defendant in the amount of $547.81, unless exceptions be filed hereto within the time limited by law. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.